# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY); *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> United States Department of Health and Human Services, *et al.*, <br><br> Defendants. | Civil Action No. 1:20-cv-11297 |

## OPPOSITION TO DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS

Plaintiffs challenge a U.S. Department of Health and Human Services ("HHS") regulation—the Rollback Rule—that eliminates critical protections against discrimination in healthcare created by Section 1557 of the Affordable Care Act. In light of the change in administration and the President's January 20, 2021 Executive Order entitled "Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation," this Court deferred a hearing on Defendants' motion to dismiss for two months and ordered the submission of status reports a week before the rescheduled hearing. It has now been seven weeks, yet Defendants have not offered any indication of the administration's position on the legality of the Rollback Rule; whether HHS intends to rescind, revise, or replace it; or what specific timeline they anticipate for taking such action. Instead, Defendants now move for an indefinite stay of these proceedings, even though most of the Rollback Rule remains in effect and, as detailed herein, the harms Plaintiffs allege continue.

Plaintiffs understand that Defendants may need more time to answer these questions. As such, when the Defendants announced their intent to seek a stay, Plaintiffs responded by proposing a joint request for a 30-day extension of the status report deadline, with a rescheduled hearing on a date convenient for the Court. The Defendants declined, moving for a stay instead. In the event HHS provides clarity on the fate of the Rollback Rule—by announcing a change in position on the rule's legality, providing a firm timeline for regulatory action, or issuing guidance or taking enforcement action to address and mitigate the harms of the rule, for instance—a stay may yet be appropriate. In the absence of such confirmation, a stay that puts this litigation into an indefinite hold is unwarranted.

The motion should be denied. Defendants have not met their burden as moving parties to show that a stay is appropriate. The motion principally relies on the January 20 Executive Order, yet this lawsuit challenges several provisions of the Rollback Rule that are not necessarily subject to that order. Moreover, the January 20 Executive Order directs agencies to consider revising regulations and taking other action to prohibit sexual orientation and gender identity discrimination, and to develop a plan to do so by April 30, 2021. Yet, it does not mandate that Defendants take any specific regulatory action—let alone end the harms caused by the Rollback Rule's illegal provisions—by that date.[1] At the same time, a stay will prejudice Plaintiffs by allowing provisions of the rule that have not been enjoined to continue to sow confusion and harm Plaintiffs and their patients, members, and clients. Defendants' request for a stay at this juncture should be denied.

---

[1]  *See* Exec. Order No. 13988, Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation, 86 Fed. Reg. 7023, 7023, 7024 (Jan. 20, 2021). HHS can of course announce its Rollback Rule intentions before April 30—and the Court should require this step be taken before granting the request to stay the case.

**Procedural Background**

Plaintiffs challenge HHS's promulgation of the Rollback Rule, which eliminated critical protections against discrimination in healthcare under Section 1557 of the Affordable Care Act. ECF No. 18 (Sept. 18, 2020). Defendants moved to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 21 (Oct. 14, 2020). That motion is fully briefed.

After the motion was briefed, the President issued Executive Order 13988. The order states that, "[u]nder *Bostock*'s reasoning, laws that prohibit sex discrimination . . . prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the contrary." Exec. Order No. 13988, 86 Fed. Reg. at 7023 (citing *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020)). The order directs agencies to "as soon as practicable . . . , consider whether to revise, suspend, or rescind such agency actions" that are "promulgated . . . under . . . any . . . statute . . . that prohibits sex discrimination," such as Section 1557, "as necessary to fully implement" those statutes and the administration's policy "to prevent and combat discrimination on the basis of gender identity or sexual orientation." *Id.* §§ 1, 2(a)(i), (b), 86 Fed. Reg. at 7023, 7024. It also directs agencies to "develop . . . a plan to carry out" such actions "within 100 days" of the order, that is, by April 30, 2021. *Id.* § 2(d), 86 Fed. Reg. at 7024.

In light of this order, the Court converted its January 26, 2021, hearing on the pending Motion to Dismiss to a status conference. ECF No. 37. At that hearing, Defendants requested additional time to determine the new administration's position on the Rollback Rule. The Court granted the parties an additional two months, ordering a status report be filed by March 17, 2021, and reset the motion hearing for March 24, 2021. ECF No. 38.

Defendants now seek to stay the proceedings altogether. In response to Defendants' notice of their intention to move to stay the case, Plaintiffs proposed to agree to a 30-day delay of the Court's March 17 deadline and a rescheduled hearing on the motion to dismiss at a date convenient for the Court after that deadline, all to provide additional time for Defendants to review the challenged regulation. Defendants declined, filing the present motion instead.

## Argument

Defendants' request for an open-ended stay—obligating them only to offer a status report nearly two months from now—should be denied.  A party requesting a stay bears the burden to make out a "clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  As the First Circuit has made clear, "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992).

Defendants have not shown that an open-ended stay of proceedings is reasonable or justified.  There is as yet no indication as to how HHS intends to proceed with respect to the Rollback Rule, nor have Defendants offered any explanation why HHS cannot determine and communicate any new course of action now.  In contrast, Plaintiffs have alleged that they and their members, patients, and clients face ongoing harm from the effects of the Rollback Rule as long as it remains in place.

**I.    Defendants fail to meet their burden of demonstrating "a clear case of hardship or inequity" that would warrant a stay of proceedings.**

Defendants base their entire motion on Executive Order 13988's requirement that agencies produce a plan on how to implement that order within 100 days. As a threshold matter, this

4

Executive Order cannot justify putting this entire matter on indefinite hold, because the allegations in the Amended Complaint implicate a host of legal infirmities in the Rollback Rule beyond its discrimination against LGBTQ+ people. For example, none of the following infirmities of the Rollback Rule challenged by the Amended Complaint are within the scope of the Executive Order: (i) the Rollback Rule deletes "pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions" from the 2016 Rule's definition of "on the basis of sex," Am. Compl. ¶¶ 158, 203–04, 258–64, 272, 276, 279; (ii) the Rollback Rule eliminates a unified enforcement scheme, Am. Compl. ¶¶ 304–17; (iii) the Rollback Rule impermissibly narrows of the definition of "health program or activity," *id.* ¶¶ 318–30; (iv) the Rollback Rule jettisons the notice and taglines requirement necessary to ensure "meaningful access" for persons with limited English proficiency, *id.* ¶¶ 331–38; and (v) the Rollback Rule imports blanket religious and abortion exemptions from the Title IX context, *id.* ¶¶ 281–303. And while the Executive Order certainly requires HHS to reconsider the Rollback Rule's inconsistency with *Bostock* and with the administration policy expressed in the Order, it does not ensure that specific and meaningful action to mitigate ongoing harm arising from the Rollback Rule will occur within and beyond the 100-day timeframe.[2]

Defendants do not claim they cannot act more swiftly, nor is there any reason to believe that to be the case. The Government has already notified other federal courts of their change in position with respect to other agency actions and regulations in light of pending litigation

---

[2] In any event, the Executive Order's timeframe does not dictate the timeframes associated with this case. That is because the Executive Order outlines a temporal "floor" for reassessment of federal antidiscrimination law, not a "ceiling." It does not preclude agencies from taking more expeditious action.

deadlines.[3] The Government has also acted swiftly to notify the Court of the new administration's changes in position in other pending litigation of significance to HHS.[4] And HHS itself has taken quick administrative action in response to other recent presidential orders.[5,6]

These actions taken by the new administration demonstrate that it is neither unreasonable nor an excessive hardship for HHS to assess the new administration's position on the Rollback Rule. Absent announcement of its intended course of action, HHS cannot meet the burden necessary to warrant a stay. In contrast, the open-ended stay requested by Defendants would harm Plaintiffs and their patients, members, and clients.

## II.     The imposition of a stay would prejudice the Plaintiffs.

Defendants argue that the imposition of a stay will not prejudice the Plaintiffs, relying chiefly on the entry of preliminary injunctions in other cases challenging the Rollback Rule. *See*

---

[3]     *See, e.g.*, Motion to Vacate the Judgments of the Court of Appeals and Remand, to Remove the Cases From the March 2021 Argument Calendar, and to Hold Further Briefing in Abeyance Pending Disposition of This Motion at 4, *Cochran v. Gresham* & *Arkansas v. Gresham*, Nos. 20-37 and 20-38 (U.S. Feb. 22, 2021) ("On February 12, 2021, HHS sent letters to Arkansas, New Hampshire, and other States with previously approved demonstration projects that include work-related requirements informing them that HHS has begun a process of determining whether to withdraw approval of those requirements."); Notice at 1, *Ill. Coalition for Immigrant & Refugee Rights, Inc. v. Mayorkas*, No. 19-cv-06334 (N.D. Ill. Mar. 10, 2021) ("Defendants hereby notify the Court that, yesterday . . . DHS released a statement indicating that . . . it 'has determined that continuing to defend the final rule, Inadmissibility on Public Charge Grounds . . . is neither in the public interest nor an efficient use of limited government resources . . . .'").

[4]     *See* Letter of Respondents United States, et al. Notifying the Court of the Federal Government's Change in Position from That Presented in Its Brief on the Merits Filed in These Cases, *California v. Texas* & *Texas v. California*, Nos. 19-840 and 19-1019 (U.S. Feb. 10, 2021) ("Following the change in Administration, the Department of Justice has reconsidered the government's position in these cases. . . . [T]he United States no longer adheres to the conclusions in the previously filed brief of the federal respondent.").

[5]     *See* Executive Order on Strengthening Medicaid and the Affordable Care Act, Exec. Order No. 14009, 86 Fed. Reg. 7793 (Jan. 28, 2021); Press Release, U.S. Dep't Health & Hum. Servs., HHS Announces Marketplace Special Enrollment Period for COVID-19 Public Health Emergency (Jan. 28, 2021) (establishing a special enrollment period for ACA marketplace insurance).

[6]     https://perma.cc/GRY8-9P9W

Mot. ¶¶ 7–8.  However, those preliminary injunctions address only two of several legal issues in this case—namely, the definition of discrimination "on the basis of sex" and the incorporation of a blanket religious exemption.  *See Walker v. Azar,* 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020) ("[T]he Court stays the repeal of the 2016 definition of discrimination on the basis of sex. . . .  In addition, the Court preliminarily enjoins the defendants from enforcing the repeal."); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020) ("HHS will be preliminarily enjoined from enforcing the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes 'discrimination on the basis of . . . sex stereotyping.'"); *id.* ("In addition, the agency will be preliminarily enjoined from enforcing its incorporation of the religious exemption contained in Title IX.").  These two preliminary injunctions do not address other aspects of the Rollback Rule that Plaintiffs challenge.

Two examples suffice to illustrate ongoing prejudice to Plaintiffs.  First, the Rollback Rule's narrowed definition of "health program or activity" so as to remove formerly covered health insurance plans from the scope of Section 1557, *see* Pls.' Mem. in Opp'n to Mot. to Dismiss at 26–30, has generated continued confusion and uncertainty about providers' and insurers' legal obligations under Section 1557.  In a pending Fourth Circuit matter, a North Carolina public sector health insurance plan is seeking dismissal of a challenge to the plan's categorical exclusion of coverage for treatment for gender dysphoria.  *See* Brief of Appellant, ECF No. 27, *Kadel v. North Carolina State Health Plan*, No. 20-1049 (4th Cir.) (filed July 30, 2020).  The Plan maintains that it is no longer a covered entity under the Rollback Rule and thus no longer subject to Section 1557. *Id.* at 21 ("The restrictions of § 1557 do not, as of the latest interpretation from HHS, apply to the State Health Plan at all.").  This is but one example of how the Rollback Rule has impermissibly shifted the understanding of what is permissible across the vast landscape of American healthcare;

7

others are undoubtedly proliferating. With the Rollback Rule still in effect, the Plaintiffs, as well as their patients and their members, continue to be denied a proper interpretation of the scope of Section 1557, and face consequent healthcare discrimination in the vein of the North Carolina example.

Second, the Rule's elimination of the prohibition against categorical coverage exclusions has "embolden[ed] healthcare providers and insurers to revert to discriminatory practices and policies related to gender identity and sex-stereotyping," Am. Compl. ¶ 200, resulting in loss of critical coverage for Plaintiffs and their patients, *see, e.g.*, LaPointe Decl. at ¶¶ 17, 26; Reiner Decl. at ¶ 18, Stark Decl. at ¶ 27. For example, insurers—even those who remain covered entities under the Rollback Rule—have inserted new categorical exclusions of gender-affirming care into their policies in 2021. *See, e.g.,* Out2Enroll, *Summary of Findings: 2021 Marketplace Plan Compliance with Section 1557*[7] (identifying an increase in the proportion of marketplace plans that include explicit categorical exclusions of treatment for gender dysphoria, from 3% of plans reviewed in 2020 to 7% in 2021); Bright Health, *2021 Certificate of Coverage* at 52[8] (exemplifying one such plan that introduced a categorical exclusion of coverage for "medical services, prescription drugs and surgical services related to gender dysphoria, gender identity, and gender transition and reassignment" in 2021). Under the Rollback Rule, Plaintiffs and their patients, clients, and members will have reduced avenues for redress available to challenge these types of discriminatory exclusions.

Entities still ostensibly covered under Section 1557 have relied on the Rollback Rule to argue that they are free to incorporate such categorical exclusions, notwithstanding the preliminary

---

[7]     https://perma.cc/NY3D-GTAR

[8]     https://perma.cc/8JQT-Z5UL

injunctions entered in other cases challenging the Rule.  Insurers have plainly asserted in recent litigation that categorical exclusions of gender confirmation surgery do not violate the Affordable Care Act under the Rollback Rule.  *See, e.g.,* Motion to Dismiss at 7–8, ECF No. 17, *Pritchard v. Blue Cross Blue Shield of Illinois*, No. 20-cv-06145 (W.D. Wash. Feb. 25, 2021) ("[C]ourts have upheld the 2020 Rule to the extent applicable here, and confirmed that the ACA does not require that health plans cover gender reassignment surgery.  Therefore, the Exclusion does not violate the ACA's prohibition of discrimination on the basis of sex.").  The proliferation of entities that perceive their practices to be outside of Section 1557's coverage will continue to make it more difficult for Plaintiffs and their patients, clients, and members to access health coverage and to enforce their rights in light of these kinds of categorical exclusions.

Moreover, Plaintiffs face a landscape of heightened discrimination and ongoing confusion sewn by the Rollback Rule and its patchwork approach to enforcement, *see* Pls.' Mem. in Opp'n to Mot. to Dismiss at 30–32.  Some of this occurs in plain view, such as where providers sue to exempt themselves from enforcement action under future regulations promulgated under Section 1557.[9]  But what is in plain view must be but a fraction of what is occurring in doctors' offices and hospitals across the country.  Such instances of discrimination may not always make their way into a federal courtroom, but even the fact that some do suggests strongly that the Rollback Rule is continuing to effect widespread harm.  Moreover, the Rollback Rule's weakened scheme for

---

[9]   For example, in recent briefing filed in *Franciscan Alliance v. Cochran*, a group of providers and insurers reinvigorated their challenges to the 2016 Rule in petitioning the Fifth Circuit for plaintiff-specific injunctions that would enable them to refuse to perform or provide insurance coverage for gender-affirming care or abortion care under not only the 2016 Rule, but under any future regulations issued under Section 1557.  *See* Brief of Plaintiffs-Appellants Franciscan Alliance, Inc., Christian Medical & Dental Society, and Specialty Physicians of Illinois, LLC, *Franciscan Alliance v. Cochran*, No. 20-10093, Document No. 00515573352 (5th Cir. Sept. 21, 2020); *see also Religious Sisters of Mercy v. Azar*, Nos. 3:16-cv-00386 & 3:16-cv-00432, 2021 WL 191009 (D.N.D. Jan. 19, 2021).

enforcement provides Plaintiffs with fewer avenues for challenging the actions of entities who now claim exemptions from Section 1557's prohibitions on discrimination.

For Plaintiffs, continued delay in this matter is prejudicial. The overall environment of confusion and uncertainty enabled by the Rollback Rule, its narrowed scope, its elimination of critical coverage protections, and its patchwork enforcement scheme have exacerbated fears of discrimination within the communities that Plaintiff Healthcare Facilities and Plaintiff Healthcare Advocates represent and serve. *See, e.g.* Christina Caron, *L.G.B.T.Q. People Face Increased Risks From Covid, but Many Don't Want the Vaccine*, N.Y. Times (Mar. 5, 2021).[10] These fears of discrimination have operated as a significant deterrent for individuals seeking healthcare, even in the face of the pandemic, *id.,* compelling Plaintiff Healthcare Facilities and Plaintiff Healthcare Advocates to divert resources from other programs or services due to their patients' and constituents heightened fears of discrimination from other providers, *see* Pls.' Mem. in Opp'n to Mot. to Dismiss at 9–10 & n.2

Based on these continuing harms stemming from the Rollback Rule, an open-ended stay of proceedings is both untenable and unwarranted in this case. Defendants have not demonstrated that denying the stay would cause hardship sufficient to justify placing proceedings on hold in light of ongoing harm to the Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for a Stay of Proceedings.

---

[10] Christina Caron, L.G.B.T.Q. People Face Increased Risks From Covid, but Many Don't Want the Vaccine, N.Y. Times (updated Mar. 12, 2021), .https://www.nytimes.com/2021/03/05/well/lgbtq-covid-19-vaccine.html

Dated: March 17, 2021                                    Respectfully submitted,

*/s/ Kevin Costello*
Kevin Costello (BBO No. 669100)                          William H. Kettlewell (BBO No. 270320)
Maryanne Tomazic (admitted pro hac vice)                 HOGAN LOVELLS US LLP
CENTER FOR HEALTH LAW & POLICY INNOVATION                125 High Street
Harvard Law School                                       Suite 2010
1585 Massachusetts Avenue                                Boston, MA 02110
Cambridge, MA 02138                                      Phone: 617.371.1000
Phone: 617.496.0901                                      bill.kettlewell@hoganlovells.com
kcostello@law.harvard.edu
mtomazic@law.harvard.edu                                 Jessica L. Ellsworth (admitted pro hac vice)
                                                         Kirti Datla (admitted pro hac vice)
Sunu Chandy (admitted pro hac vice)                      Jo-Ann Tamila Sagar (admitted pro hac vice)
Michelle Banker (admitted pro hac vice)                  Erin R. Chapman (admitted pro hac vice)
Lauren Gorodetsky (admitted pro hac vice)                HOGAN LOVELLS US LLP
Dorianne Mason (admitted pro hac vice)                   555 Thirteenth Street, N.W.
NATIONAL WOMEN'S LAW CENTER                              Washington, D.C. 20004
11 Dupont Circle NW Suite 800                            Phone: 202.637.5600
Washington, DC 20036                                     jessica.ellsworth@hoganlovells.com
Phone: 202.588.5180                                      kirti.datla @hoganlovells.com
schandy@nwlc.org                                         jo-ann.sagar@hoganlovells.com
mbanker@nwlc.org                                         erin.chapman@hoganlovells.com
lgorodetsky@nwlc.org
dmason@nwlc.org                                          Kristina Alekseyeva (admitted pro hac vice)
                                                         Peter W. Bautz (admitted pro hac vice)
David Brown (admitted pro hac vice)                      HOGAN LOVELLS US LLP
Noah E. Lewis (admitted pro hac vice)                    390 Madison Avenue
Alejandra Caraballo (admitted pro hac vice)              New York, NY 10017
TRANSGENDER LEGAL DEFENSE AND EDUCATION                  Phone: 212.918.3000
FUND, INC.                                               kristina.alekseyeva@hoganlovells.com
520 8th Ave. Ste. 2204                                   peter.bautz@hoganlovells.com
New York, NY 10018
Phone: 646.862.9396                                      Lynly Egyes (admitted pro hac vice)
dbrown@transgenderlegal.org                              Dale Melchert (admitted pro hac vice)
nlewis@transgenderlegal.org                              TRANSGENDER LAW CENTER
acaraballo@transgenderlegal.org                          P.O. Box 70976
                                                         Oakland, CA 94612
                                                         Phone: 510.587.9696
                                                         lynly@transgenderlawcenter.org
                                                         dale@transgenderlawcenter.org

                                                         *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY); et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>United States Department of Health and Human Services, et al.,<br><br>    Defendants. | Civil Action No. 1:20-cv-11297 |

**CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing document was filed through the CM/ECF system on March 17, 2021 and thus will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 17, 2021

                */s/ Kevin Costello*
                Kevin Costello (BBO No. 669100)
                CENTER FOR HEALTH LAW & POLICY INNOVATION
                Harvard Law School
                1585 Massachusetts Avenue
                Cambridge, MA 02138
                Phone: 617.496.0901
                kcostello@law.harvard.edu