# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY); Callen-Lorde Community Health Center; Campaign for Southern Equality; Darren Lazor; Equality California; Fenway Health; Indigenous Women Rising; NO/AIDS Task Force (d/b/a CrescentCare); and Transgender Emergency Fund of Massachusetts,<br><br>      Plaintiffs,<br><br>      v.<br><br>United States Department of Health and Human Services; Xavier Becerra, *in his official capacity as secretary of the U.S. Department of Health and Human Services*; Robinsue Frohboese, *in her official capacity as Acting Director, Office for Civil Rights, U.S. Department of Health and Human Services*; and Chiquita Brooks-LaSure, *in her official capacity as Administrator for the Centers for Medicare and Medicaid Services, U.S. Department of Health and Human Services*,<br><br>      Defendants. | Civil Action No. 1:20-cv-11297 |

## NOTICE OF FILING OF SUPPLEMENTAL DECLARATIONS

On June 3, 2021, the Court held a hearing on the Defendants' motion to dismiss. *See* ECF No. 52. During that hearing, the Court invited Plaintiffs to supplement the record regarding Plaintiffs' standing to bring this suit. *See* Transcript of Hearing on Defendants' Motion to Dismiss (hereinafter "Mot. Hr'g Tr.") at 78:16-19. Plaintiffs maintain that the Court should analyze their standing as of the time of the filing of the complaint. *See, e.g.*, *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004) ("Standing in the jurisdictional sense is based on the facts as they

existed at the time the complaint was filed."). However, Plaintiffs submit this Notice of Filing of Supplemental Declarations to respond to several specific factual questions raised by the Court during the hearing regarding events that occurred after the filing of the complaint. In particular:

1. The Court asked that Plaintiffs provide the Court with a copy of the Out2Enroll survey. *See* Mot. Hr'g Tr. at 38:11-17 (Court asking "where would [it] find" the survey); *see also id*. at 40:10-12 (Court stating that it would be "useful to know" whether "insurance companies actually did cut [coverage] out"); *see also id*. at 45:18-25 (similar). To answer the Court's question, Plaintiffs offer, as Exhibit A to this Notice, the declaration of Katie Keith, principal at Keith Policy Solutions, and a co-founder and Steering Committee Member of Out2Enroll, a national initiative dedicated to ensuring that LGBTQ+ people have information about their health insurance options under the Affordable Care Act (ACA). A summary of Out2Enroll's findings regarding the compliance of 2021 Marketplace Plans with one aspect of Section 1557 is attached as Exhibit 1 to the Keith Declaration. As explained in the Keith Declaration, Out2Enroll has observed a trend toward more insurance exclusions of gender affirming care observed after HHS issued the Rollback Rule. *See* Exhibit A, Keith Decl. ¶¶ 9-17.

Cigna is a prominent example of an insurance company that has changed coverage policies. Cigna describes itself as having more than 22 million health insurance members in the United States.[1] Cigna publishes and regularly updates "medical coverage policies" that apply to health insurance plans operated by Cigna, with some plan-by-plan and state variations. Buoyed by the Rollback Rule's deletion of the definition of sex discrimination, Cigna reinstated a medical coverage policy that contains exclusions for surgical services commonly deemed medically necessary as an integral part of gender affirming care. For example, Cigna's medical coverage

---

[1] *See Company Profile*, Cigna (June 16, 2021), https://perma.cc/7ZEG-XNDT.

policy for treatment of gender dysphoria contains a blanket exclusion for a host of surgical procedures that it deems "not medically necessary" "when performed as part of gender reassignment surgery." *See* Medical Coverage Policy: Treatment of Gender Dysphoria, Cigna 7 (May 18, 2021) ("Treatment of Gender Dysphoria"), available at https://perma.cc/UY3K-KNXG.[2] Many of these same procedures are covered by Cigna when requested for medical reasons other than gender affirming care. *See, e.g.*, Medical Coverage Policy: Rhinoplasty, Vestibular Stenosis Repair and Septoplasty, Cigna 1-2 (June 15, 2021), available at https://perma.cc/5C6N-8VSV (coverage of rhinoplasty for a several health needs). State regulators have concluded that such differential health insurance coverage constitutes impermissible sex discrimination. *See* Conn. Comm'n on Hum. Rts. and Opportunities, Declaratory Ruling on Petition Regarding Health Insurers' Categorization of Certain Gender-Confirming Procedures as Cosmetic 10-12, 25 (Apr. 17, 2020), available at https://perma.cc/4A32-5VJ4 (citing rhinoplasty example and concluding that "a plan that denies coverage for treatments related to gender dysphoria as cosmetic, but grants coverage for the same treatments when related to other conditions as medically necessary, [] is facial discrimination on the basis of gender identity and sex.").

---

[2] This policy change excepts plans in New York State. The New York Department of Financial Services has advised issuers that they are prohibited from "excluding medically necessary services . . . on the basis that the treatment is for gender dysphoria" and that they should review requests for coverage according to a utilization review plan on a case-by-case basis. *Insurance Circular Letter No. 13*, N.Y. Dep't of Fin. Servs. (June 28, 2020), https://perma.cc/9U2Z-SAVU. Cigna implicitly acknowledges the threat of enforcement of non-discrimination rules by New York State by excepting plans issued in that state from the exclusion by stating "[f]or New York regulated benefit plans (e.g., insured): [t]he procedures listed below will be further reviewed on a case-by-case basis by a medical director." *See* Treatment of Gender Dysphoria 4.

Each of the provider plaintiffs has patients enrolled in Cigna plans.[3] And as described in the Amended Complaint and in the declarations previously submitted by the plaintiff healthcare facilities, insurance exclusions for gender affirming care directly cause the Plaintiffs harm. *See* Am. Compl., ECF No. 18 ¶ 223; Riener Decl., ECF No. 27-7 ¶ 18; LaPointe Decl., ECF No. 27-4 ¶¶ 17-19, 21-27; Stark Decl., ECF No. 27-9 ¶ 27.

2. The Court also asked for additional information about taglines. *See* Mot. Hr'g Tr. at 61:11-17. Taglines are short statements that inform persons with limited English proficiency (LEP) of the availability of language assistance services. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,473 (May 18, 2016) (Appendix B to the 2016 Rule providing the following sample tagline in English: "ATTENTION: If you speak [insert language], language assistance services, free of charge, are available to you. Call 1-xxx-xxx-xxxx (TTY: 1-xxx-xxx-xxxx)."). The 2016 Rule included requirements that covered entities post notices and taglines in a non-English language informing a LEP individual how she may access language services, and that "qualified" translators be available. *Id*. at 31,415 (codified at 45 C.F.R. § 92.8 (2019)). The Rollback Rule does not include this requirement.

Since the Rollback Rule was issued some insurers have changed the notice and taglines included with major plan documents. As one example, Arkansas Blue Cross Blue Shield removed the "Non-Discrimination and Language Assistance Notice" from several of its 2021 Summary of Benefits and Coverage and Certificates of Coverage. *Compare Arkansas Blue Cross and Blue Shield: Silver Plan 1 PPO Summary of Benefits and Coverage* 7-8 (2020), available at

---

[3] *See Frequently Asked Questions*, Fenway Health (June 16, 2021), available at https://perma.cc/7UGN-27XB; Callen-Lorde, *Rights & Responsibilities Policies* 1 (rev. 2012), available at https://perma.cc/QT5Q-BP6B; *Insurance Enrollment & Paying for Care*, Crescent Health (June 16, 2021), available at https://perma.cc/8REC-AXS3.

https://perma.cc/4PQG-ZG9U, *with Arkansas Blue Cross and Blue Shield: Silver Plan 1 PPO Summary of Benefits and Coverage* (2021), available at https://perma.cc/T2CJ-HVTF. *Compare also Arkansas Blue Cross Blue Shield: Silver Plan* 4-5 (2020), available at https://perma.cc/8KDL-VXEE, *with Arkansas Blue Cross Blue Shield: Silver Plan* (2021), available at https://perma.cc/D4K9-MQJK. The omitted Non-Discrimination and Language Assistance Notice includes a statement that the insurer "does not discriminate, exclude, or treat people differently on the basis of race, color, national origin, age, disability, or sex" and provides information as to where an individual could file a grievance or civil rights complaint regarding discrimination or inadequate language assistance services. The notice also provides taglines in 21 languages with information about how to obtain language access resources. Plaintiff CrescentCare serves patients from Arkansas. *See* Twilbeck Decl., ECF No. 27-12 ¶ 5.

As another example, Bright Health has removed its "Nondiscrimination Notice and Assistance with Communication" from some of its 2021 plan documents for plans sold in Alabama. *Compare Bright Health: Silver 1 Plan Summary of Benefits and Coverage* 6-9 (2020), available at https://perma.cc/K5QR-KMZP, *with Bright Health: Silver 4200 Summary of Benefits of Coverage* (2021), available at https://perma.cc/P3BG-MKQ9. The 2021 Summary of Benefits and Coverage only includes language access services statements in four languages (compared with the thirty-six languages listed in 2020) and no longer includes an explicit statement informing consumers that the insurer "does not exclude, deny benefits to, or otherwise discriminate against any individual on the basis of sex, age, race, color, national origin, or disability" and where complaints regarding discrimination and inadequate language assistance can be filed. Plaintiff CrescentCare also serves patients from Alabama. *See* Twilbeck Decl., ECF No. 27-12 ¶ 5.

3. Finally, the Court asked several questions related to discrimination against people seeking pregnancy-related and reproductive care. First, the Court asked for an update regarding one of the Plaintiff Healthcare Advocates, Indigenous Women Rising. In particular, the Court asked whether Indigenous Women Rising has experienced "problem[s]" with their abortion and midwifery services now that "this rule has been in place for a year." *See* Mot. Hr'g Tr. at 8:25-9:5. To answer the Court's question, Plaintiffs offer, as Exhibit B to this Notice, the supplemental declaration of Rachael Lorenzo, Co-Founder and Abortion Access Lead of Indigenous Women Rising.

Second, the Court asked whether insurers are "continuing to cover … pregnancy-related issues." *See* Mot. Hr'g Tr. at 18:23-24; *see also id*. at 16:20-17:5. To answer the Court's question, Plaintiffs direct the Court's attention to publicly available documents regarding health plans subject to Section 1557 that contain categorical exclusions of pregnancy coverage for non-spousal dependents, *i.e.*, for adult children who are dependents on their parents' plans. For example, such exclusions exist in state employee health plans in Louisiana,[4] Alabama,[5] Arkansas,[6] Mississippi,[7]

---

[4] *E.g.*, La. Off. of Grp. Benefits, Magnolia Open Access Plan 56 (2021) (Blue Cross Blue Shield Louisiana), https://perma.cc/66DK-623E ("Pregnancy Care is a covered expense for an Employee or Dependent pregnant Spouse of an Employee only.").

[5] BlueCross BlueShield of Ala., Blue Cross and You 1, https://perma.cc/LX9B-CX35 (last visited June 17, 2021) ("Note: PEEHIP does not cover maternity benefits for dependent children of any age regardless of marital status.")

[6] Plan Document and Summary Plan Description for Arkansas State University System Employee Health Benefit Plan 33, 51 (effective Jan. 1, 2021), https://perma.cc/2J37-92UH ("Coverage of Pregnancy. The Allowable Charges for the care and treatment of Pregnancy are covered the same as any other Sickness" and "Sickness is: . . . For a covered Dependent other than Spouse: Illness or disease, not including Pregnancy or its complications.").

[7] *E.g.*, Mississippi State and School Employees' Health Insurance Plan: Base, Summary of Benefits and Coverage at 3, https://perma.cc/WCV4-BUJQ ("Prenatal/postnatal care (other than ACA-required preventive screenings) is not covered for dependent children. . . . Delivery expenses are not covered for dependent children. Delivery expenses are covered at no charge for employees and covered spouses who complete the Maternity Management Program.").

and North Carolina,[8] among others. Plaintiff CrescentCare provides healthcare services, including obstetric and gynecological care, and pre- and post-natal care, to patients from these States. *See* Am. Compl., ECF No. 18 ¶¶ 37, 39; Twilbeck Decl., ECF No. 27-12 ¶¶ 5, 7-8; Riener Decl., ECF No. 27-7 ¶ 3. For that reason, there is a substantial risk that these exclusions will harm Plaintiffs.

And third, the Court asked whether it is "the position of HHS that discrimination on the basis of sex includes pregnancy-related discrimination." Mot. Hr'g Tr. at 21:13-15; *see also id*. at 15:22-25 (Court asking whether HHS's "new enforcement policy … extend[s] to the issues of pregnancy"). To answer the Court's question, Plaintiffs direct the Court's attention to five complaints that the National Women's Law Center (NWLC) filed on June 4, 2013 with the Department of Health and Human Services Office for Civil Rights against Auburn University, Battelle Memorial Institute, Beacon Health System, Gonzaga University, and the Pennsylvania State System of Higher Education.[9] The complaints alleged those entities discriminated on the basis of sex by excluding from the employee health plans they sponsor coverage for maternity care for dependent children.

On January 19, 2017, the Office for Civil Rights sent four letters addressed to NWLC and to each of Auburn University, Battelle Memorial Institute, Gonzaga University, and the Pennsylvania State System of Higher Education. Those letters stated that OCR "has completed its review of this complaint" and that, "[i]n response to OCR's request for data," each of the subject plans had voluntarily amended its plan to add maternity care coverage for dependent children of

---

[8] *E.g.*, BlueCross BlueShield of N.C., North Carolina State Health Plan for Teachers and Employees 80/20 PPO Plan 26 (rev. Jun 1, 2021), https://perma.cc/ZE5Y-66K9 ("Maternity care includes prenatal care, labor and delivery, and post-delivery care, and are available to all *subscribers* and enrolled *spouses* of *subscribers*. However, maternity benefits for *dependent* children cover only the treatment for *complications of pregnancy*.").

[9] A copy of one such complaint, the administrative complaint filed by National Women's Law Center against Auburn University, is available at https://perma.cc/8ZBJ-GQW7.

employees. Each of the letters also clarified that the 2016 Rule implementing Section 1557 prohibited discrimination on the basis of, *inter alia*, "sex (including pregnancy)."[10] *See* Am. Compl., ECF No. 18 ¶ 102.

The only complaint submitted by NWLC that was not closed out on January 19, 2017, was the Beacon Health System complaint. Publicly available documents for the 2019 plan year indicate that Beacon Health System continued to exclude dependent maternity coverage from the health plans they sponsor.[11] However, on November 6, 2020, NWLC received a letter stating: "OCR has reviewed the allegations in this matter and has determined that OCR will not investigate further the allegations raised. OCR is closing the case, effective the date of this letter."[12] The letter included standard language stating that OCR enforces civil rights laws that prohibit discrimination based on "sex," but nowhere did the letter mention, as the previous closeout letters did on January 19, 2017, that discrimination on the basis of sex includes pregnancy. Plaintiffs therefore have reason to believe that, consistent with the Rollback Rule's deletion of explicit protections against pregnancy discrimination, OCR is no longer prioritizing enforcement against these plans as it once

---

[10] *See* Letter from Deputy Dir. for Civil Rts., Off. for Civil Rts., Dep't of Health & Hum. Servs., to Marcia D. Greenberger, NWLC, and Dr. Jay Gogue, President, Auburn Univ. (Jan. 19, 2017), available at https://perma.cc/5QX2-329M; Letter from Deputy Dir. for Civil Rts., Off. for Civil Rts., Dep't of Health & Hum. Servs., to Marcia D. Greenberger, NWLC, and Jeffrey Wadsworth, President & CEO, Batelle Mem'l Inst. (Jan. 19, 2017), available at https://perma.cc/U8YT-H7ZF; Letter from Deputy Dir. for Civil Rts., Off. for Civil Rts., Dep't of Health & Hum. Servs., to Marcia D. Greenberger, NWLC, and Thayne M. McCulloh, President, Gonzaga Univ. (Jan. 19, 2017), available at https://perma.cc/BJX4-A6N5; Letter from Deputy Dir. for Civil Rts., Off. for Civil Rts., Dep't of Health & Hum. Servs., to Marcia D. Greenberger, NWLC, and Frank T. Brogan, Chancellor, Pa. State Sys. of Higher Educ. (Jan. 19, 2017), available at https://perma.cc/ZRG3-GSFG.
[11] Beacon Health System, 2019 Enrollment Guide 6, 8, available at https://perma.cc/T9Q6-DTZU (last visited June 17, 2021) (including a "Medical Schedule of Benefits" stating that pregnancy coverage "[e]xcludes dependent pregnancy.").
[12] Letter from Carla Carter, Supervisory Civil Rts. Analyst, Off. for Civil Rts., Dep't of Health & Hum. Servs., to Marcia D. Greenberger & Judith G. Waxman, NWLC (Nov. 6, 2020) available at https://perma.cc/25J3-6E7E.

did, and that, as a result, plans such as the state employee plans listed *supra* are emboldened to maintain or add dependent maternity coverage exclusions without fear of enforcement action by HHS.

Dated: June 17, 2021

Respectfully submitted,

*/s/ Kevin Costello*
Kevin Costello (BBO No. 669100)
Maryanne Tomazic (admitted pro hac vice)
CENTER FOR HEALTH LAW & POLICY
INNOVATION
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
Phone: 617.496.0901
kcostello@law.harvard.edu

Sunu Chandy (admitted pro hac vice)
Michelle Banker (admitted pro hac vice)
Lauren Gorodetsky (admitted pro hac vice)
Dorianne Mason (admitted pro hac vice)
NATIONAL WOMEN'S LAW CENTER
11 Dupont Circle NW Suite 800
Washington, DC 20036
Phone: 202.588.5180
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org
dmason@nwlc.org

David Brown (admitted pro hac vice)
Noah E. Lewis (admitted pro hac vice)
Alejandra Caraballo (admitted pro hac vice)
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
Phone: 646.862.9396
dbrown@transgenderlegal.org
nlewis@transgenderlegal.org
acaraballo@transgenderlegal.org

William H. Kettlewell (BBO No. 270320)
HOGAN LOVELLS US LLP
125 High Street
Suite 2010
Boston, MA 02110
Phone: 617.371.1000
bill.kettlewell@hoganlovells.com

Jessica L. Ellsworth (admitted pro hac vice)
Jo-Ann Tamila Sagar (admitted pro hac vice)
Erin R. Chapman (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Phone: 202.637.5600
jessica.ellsworth@hoganlovells.com
jo-ann.sagar@hoganlovells.com
erin.chapman@hoganlovells.com

Kristina Alekseyeva (admitted pro hac vice)
Peter W. Bautz (admitted pro hac vice)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Phone: 212.918.3000
kristina.alekseyeva@hoganlovells.com
peter.bautz@hoganlovells.com

Lynly Egyes (admitted pro hac vice)
Dale Melchert (admitted pro hac vice)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: 510.587.9696
lynly@transgenderlawcenter.org
dale@transgenderlawcenter.org

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to any non-registered participants.

Dated: <u>June 17, 2021</u>

<u>*/s/ Kevin Costello*</u>
Kevin Costello (BBO No. 669100)
CENTER FOR HEALTH LAW & POLICY INNOVATION
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
Phone: 617.496.0901
kcostello@law.harvard.edu
