**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| Boston Alliance of Gay, Lesbian, Bisexual and Transgender Youth (BAGLY); *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:20-cv-11297 |
| United States Department of Health and Human Services, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR VOLUNTARY REMAND**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ......................................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT ............................................................................................................5

I.   THIS COURT SHOULD DENY DEFENDANTS' REQUESTS FOR
     VOLUNTARY REMAND WITHOUT VACATUR OF THE ROLLBACK
     RULE AND FOR DISMISSAL OF THIS SUIT...............................................5

     A.   This Court Should Deny Defendants' Request For Voluntary Remand.................5

          1.   *Defendants' request for voluntary remand is made in bad faith* ................5

          2.   *Voluntary remand would not conserve judicial resources* .......................12

          3.   *Voluntary remand would unduly prejudice Plaintiffs* ...............................14

     B.   If This Court Grants The Defendants' Request For Voluntary Remand
          Over Plaintiffs' Objections, The Rollback Rule Must Be Vacated .......................16

     C.   Regardless Of Whether This Court Grants The Government's Request
          For Voluntary Remand, This Court Should Not Dismiss Plaintiffs'
          Suit ..................................................................................................................18

II.  THIS COURT SHOULD DENY DEFENDANTS' RENEWED REQUEST
     FOR A STAY .........................................................................................................19

CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Ala. Env't Council v. Administrator, U.S. E.P.A.*,
    711 F.3d 1277 (11th Cir. 2013) ........................................................................18

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) .........................................................................17

*Am. Petroleum Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012)........................................................................1, 12

*Anversa v. Partners Healthcare Sys., Inc.*,
    835 F.3d 167 (1st Cir. 2016)..............................................................................14

*Bennett v. Murphy*,
    Civil Action No. 14-10275-FDS, 2016 WL 1449571 (D. Mass. Apr. 13, 2016) ...................11

*Black Oak Energy, LLC v. FERC*,
    725 F.3d 230 (D.C. Cir. 2013)...........................................................................18

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth (BAGLY) v. U.S. Dep't of
    Health & Hum. Servs.*,
    Civil Action No. 20-11297-PBS, 2021 WL 3667760 (D. Mass. Aug. 18, 2021)............1, 4, 20

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020).....................................................................................3, 5

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962).........................................................................................11

*Byrd v. Heckler*,
    576 F. Supp. 549 (D.D.C. 1983) ..........................................................................7

*Cardelli v. DAE Aviation Enters., Corp.*,
    No. 2:11-CV-217-NT, 2012 WL 983584 (D. Me. Mar. 22, 2012).........................................20

*Checkosky v. SEC*,
    23 F.3d 452 (D.C. Cir. 1994).............................................................................3, 17

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)........................................................................................11

*Chlorine Chemistry Council v. EPA*,
    206 F.3d 1286 (D.C. Cir. 2000) ..........................................................................15

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
   375 F.3d 412 (6th Cir. 2004) ................................................................12, 13

*Code v. McHugh*,
   139 F. Supp. 3d 465 (D.D.C. 2015) ....................................................19

*Confederated Tribes of Grand Ronde Cmty. of Or. v. Salazar*,
   Civil Action No. 11-284 (RWR), 2012 WL 3757655 (D.D.C. Aug. 29, 2012) ......................1

*Conservation Law Found. v. Pritzker*,
   37 F. Supp. 3d 254 (D.D.C. 2014) .......................................................15

*Ctr. for Native Ecosystems v. Salazar*,
   711 F. Supp. 2d 1267 (D. Colo. 2010) ...............................................12

*Darby v. Cisneros*,
   509 U.S. 137 (1993) ..........................................................................14

*Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*,
   386 F.3d 344 (1st Cir. 2004) ...............................................................18

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ..........................................................................11

*Fox Television Stations, Inc. v. FCC*,
   280 F.3d 1027 (D.C. Cir.), *opinion modified on reh'g*, 293 F.3d 537
   (D.C. Cir. 2002) ...............................................................................3

*Franciscan All., Inc. v. Burwell*,
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ...............................................9

*Franciscan All., Inc. v. Price*,
   No. 7:16-cv-00108-O, 2017 WL 3616652 (N.D. Tex. July 10, 2017) ......................9

*George Hyman Constr. Co. v. Brooks*,
   963 F.2d 1532 (D.C. Cir. 1992) .........................................................20

*Harrington v. Chao*,
   280 F.3d 50 (1st Cir. 2002) ............................................................3, 17

*Heartland Reg'l Med. Ctr. v. Sebelius*,
   566 F.3d 193 (D.C. Cir. 2009) ...........................................................18

*Lawrence ex rel. Lawrence v. Chater*,
   516 U.S. 163 (1996) ..........................................................................7

## TABLE OF AUTHORITIES—Continued

Page(s)

*Lewis v. Sec'y of Navy*,
    Civil No. 10-0842 (RBW), 2014 WL 12787221 (D.D.C. Sept. 2, 2014) ...............................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)............................................................................................................18

*Lutheran Church-Missouri Synod v. FCC*,
    141 F.3d 344 (D.C. Cir. 1998) .......................................................................................2, 6, 7

*Marquis v. F.D.I.C.*,
    965 F.2d 1148 (1st Cir. 1992) ..........................................................................................19

*McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*,
    895 F. Supp. 316 (D.D.C. 1995) ......................................................................................11

*McInnis-Misenor v. Me. Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) ...............................................................................................16

*Moisa v. Barnhart*,
    367 F.3d 882 (9th Cir. 2004) ............................................................................................10

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    776 F. Supp. 2d 960 (D. Alaska 2011) .............................................................................12

*Portela-Gonzalez v. Sec'y of the Navy*,
    109 F.3d 74 (1st Cir. 1997)...............................................................................................14

*Sierra Club v. Van Antwerp*,
    560 F. Supp. 2d 21 (D.D.C. 2008) ...................................................................................19

*SKF USA Inc. v. United States*,
    254 F.3d 1022 (Fed. Cir. 2001)................................................................................. *passim*

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).......................................................................................................3, 18

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990)............................................................................................18, 19

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019).....................................................................................3, 17

*Util. Solid Waste Activities Grp. v. Env't Prot. Agency*,
    901 F.3d 414 (D.C. Cir. 2018).........................................................................................15

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*Wagner v. Principi*,
　　370 F.3d 1089 (Fed. Cir. 2004).............................................................................15

*Washington v. U.S. Dep't of State*,
　　420 F. Supp. 3d 1130 (W.D. Wash. 2019).............................................................12

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
　　No. CV 20-1630 (JEB), 2021 WL 4033072 (D.D.C. Sept. 3, 2021)......................16

*Winter v. Nat. Res. Def. Council, Inc.*,
　　555 U.S. 7 (2008)....................................................................................................16

*Zhao v. Gonzales*,
　　404 F.3d 295 (5th Cir. 2005) .................................................................................10

STATUTES:

5 U.S.C. § 551(13) .........................................................................................................14

5 U.S.C. § 706 ................................................................................................................11

5 U.S.C. § 706(2)(A).........................................................................................................3

EXECUTIVE MATERIALS:

Exec. Order No. 13985,
　　86 Fed. Reg. 7009 (Jan. 20, 2021) ...........................................................................5

Exec. Order No. 13988,
　　86 Fed. Reg. 7023 (Jan. 20, 2021) ........................................................................3, 5

ADMINISTRATIVE MATERIALS:

*Notification of Interpretation and Enforcement of Section 1557 of the Affordable
Care Act and Title IX of the Education Amendments of 1972*, 86 Fed. Reg. 27,984
　　(May 25, 2021).............................................................................................................6

Brian S. Prestes, *Remanding Without Vacating Agency Action*, 32 Seton Hall L. Rev.
　　108 (2001)...................................................................................................................17

OTHER AUTHORITIES:

HHS Press Office, *HHS Proposes to Revise ACA Section 1557 Rule to Enforce Civil
Rights in Healthcare, Conform to Law, and Eliminate Billions in Unnecessary
Costs*, HHS.gov (May 24, 2019)......................................................................................9

## INTRODUCTION

This Court should deny Defendants' motion for voluntary remand.  Defendants' rationale for a remand is that they should be permitted to develop a new rule interpreting Section 1557.  "Neither a remand nor a stay, however, is necessary to enable the federal defendants to review and reconsider the determination."  *Confederated Tribes of Grand Ronde Cmty. of Or. v. Salazar*, Civil Action No. 11-284 (RWR), 2012 WL 3757655, at *1 (D.D.C. Aug. 29, 2012).  And an agency cannot "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way."  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012).  "If that were true, a savvy agency could perpetually dodge review."  *Id*.  Indeed, Defendants moved for voluntary remand of the 2016 Rule, citing an intention to propose a new rule.  And now Defendants are moving for voluntary remand of the Rollback Rule and citing an intention to propose a new (third) rule.  As this Court stated in denying Defendants' previous attempts to stave off a ruling on the merits of this case: "Although HHS has stated its intention to 'initiate a [new] rulemaking proceeding on Section 1557,' it has not yet done so at this juncture."  *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth (BAGLY) v. U.S. Dep't of Health & Hum. Servs.*, Civil Action No. 20-11297-PBS, 2021 WL 3667760, at *14 (D. Mass. Aug. 18, 2021).  Plaintiffs, by contrast, "have shown changes in coverage by several insurers and face a risk of economic injury from reduced reimbursements now."  *Id*.

Where, as here, an agency seeks a voluntary remand to reconsider its previous position, but does not confess error, "the reviewing court has discretion over whether to remand," and "remand may be refused if the agency's request is frivolous or in bad faith."  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  Bad faith, in this context, is not as sinister as it sounds. Instead, courts find that an agency's request for voluntary remand is made in bad faith if the motion comes after substantial litigation in the case has already taken place, and is "based on a prospective

policy statement which would not bind the [agency]" to the relief sought by the plaintiffs. *Id.* (citing *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998)). That precisely describes Defendants' request here.

Defendants' remand motion never admits that the Rollback Rule is inconsistent with Section 1557, and makes no commitments about what a future Notice of Proposed Rulemaking will say. Instead of previewing the position that the agency intends to take on remand, Defendants cite two executive orders that direct agency "assessments" of whether their actions advance "equity," and "consideration" of whether their actions "implement" statutes prohibiting discrimination; an HHS policy document that expresses its intention to enforce Section 1557's prohibition of discrimination on the basis of sexual orientation and gender identity; and a line item in the regulatory agenda indicating that HHS will start a new rulemaking on Section 1557 next Spring. Nothing in those materials binds the agency to any particular result. Nor do those materials address Plaintiffs' claims regarding pregnancy, abortion care, and the scope of covered entities. Defendants are in much the same position they were in when this Court denied their motion to stay. Adding insult to injury, each of the executive actions that Defendants cite as the basis for their remand motion was available before Plaintiffs gathered supplemental evidence in support of their opposition to the Defendants' motion to dismiss, before both parties filed supplemental briefing on that motion, and before the Court issued its 45-page memorandum opinion and order on that motion. Given that history, it is clear that Defendants merely seek to avoid a ruling on the merits that the Rollback Rule is unlawful, while also refusing to admit that the Rollback Rule is unlawful or committing to correct its unlawful provisions. Because they cannot have their cake and eat it too, this Court should deny the Defendants' remand request.

Defendants further argue that, if this Court grants remand, the Court should also leave the Rollback Rule in place and dismiss Plaintiffs' complaint.  But the First Circuit has held that remand without vacatur is not a remedy that is available under the Administrative Procedure Act.  *See Harrington v. Chao*, 280 F.3d 50, 60 (1st Cir. 2002) ("criticizing the practice of remanding without vacating"); *see also Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., separate opinion) (observing that, not only does "[n]o statute governing judicial review of agency action permits such a disposition," but "the controlling statute—5 U.S.C. § 706(2)(A)—flatly prohibits it").  Even the D.C. Circuit—which, contrary to controlling First Circuit precedent, permits remand without vacatur—recognizes that "the normal course" is vacatur, *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).  The normal course is appropriate here because HHS proposes to issue an entirely new rule on remand, not to offer further support for the Rollback Rule.  *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1052 (D.C. Cir.), *opinion modified on reh'g*, 293 F.3d 537 (D.C. Cir. 2002).  Nor is dismissal appropriate given HHS's stated intention to issue a new rule.  "'[A] federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).  The motion should be denied.

## BACKGROUND

Plaintiffs challenge HHS's promulgation of the Rollback Rule, which eliminated critical protections against discrimination in healthcare under Section 1557 of the Affordable Care Act.  ECF No. 18 (Sept. 18, 2020) ("Am. Compl.").  Defendants moved to dismiss for lack of jurisdiction and failure to state a claim.  ECF No. 21 (Oct. 14, 2020).  Before the initially-scheduled hearing on the motion, President Biden took office and signed Executive Order 13988, which directs all agencies to review regulations that are or may be inconsistent with *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  Exec. Order No. 13988, 86 Fed. Reg. 7023 (Jan. 20, 2021).

Defendants then sought—but this Court denied—a stay of the litigation.  Defendants had argued that a stay was necessary to allow HHS more time to "reassess[] the issues that this case presents."  ECF No. 41 at 2 (Mar. 3, 2021).  The day of the hearing on the stay motion, HHS issued a notification which stated that HHS "will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity."  ECF No. 50 (May 10, 2021).  Recognizing that these actions did not resolve or moot the majority of Plaintiffs' claims, the Court denied the stay.  ECF Nos. 47, 48 (May 10, 2021).

After a hearing and supplemental briefing by both sides, the Court also denied in part Defendants' motion to dismiss.  ECF No. 63 (Aug. 18, 2021).  The Court held that Plaintiffs had standing to challenge the Rollback Rule's incorporation of Title IX's abortion exemption, the narrowed scope of covered entities, and the elimination of the 2016 Rule's prohibition on categorical coverage exclusions for gender transition care.  *See id*. at 19–28.  The Court held that Plaintiffs' claims are ripe.  *See id.* at 35–36.  And the Court held that Plaintiffs stated a claim that the Rollback Rule discriminates on the basis of sex and was motivated by animus against transgender people.  *Id.* at 44.[1]

Defendants have now moved for voluntary remand without vacatur of the Rollback Rule, and for a dismissal of Plaintiffs' Amended Complaint without prejudice.  In the alternative, Defendants renew their request for a stay.

---

[1] Defendants state that the Court "exercis[ed] equitable discretion to dismiss Plaintiffs' challenges to claims that are subject to nationwide preliminary injunctions."  Govt. Mem. 3.  That is inaccurate.  The Court "decline[d] to address" those challenges at this time in light of "[i]n light of the nationwide injunctions issued by sister courts."  *See BAGLY*, 2021 WL 3667760, at *4.  And no dismissal is reflected in the Court's Order.  *See id.* at *17.

## ARGUMENT

I.   **THIS COURT SHOULD DENY DEFENDANTS' REQUESTS FOR VOLUNTARY REMAND WITHOUT VACATUR OF THE ROLLBACK RULE AND FOR DISMISSAL OF THIS SUIT.**

A.   **This Court Should Deny Defendants' Request For Voluntary Remand.**

Voluntary remand gives an agency a chance to cure admitted defects in agency decision making, not to immunize those decisions from judicial scrutiny.  Yet that is what Defendants seek to use it for here.  Because Defendants' request for voluntary remand is made in bad faith, voluntary remand would not promote judicial efficiency, and voluntary remand would prejudice Plaintiffs, this Court should deny Defendants' request.

1.   *Defendants' request for voluntary remand is made in bad faith.*

Defendants cite four non-binding policy statements in support of their remand motion.  *See* Govt. Mem. 5-6; Frohboese Decl. ¶¶ 7-10.  The first, Executive Order 13985, broadly declares the Federal Government's intention to "advanc[e] equity for all," and calls for the "assess[ment of] whether, and to what extent, [agency] programs and policies perpetuate systemic barriers to opportunities and benefits for people of color and other underserved groups."  Exec. Order No. 13985, 86 Fed. Reg. 7009, 7009 (Jan. 20, 2021).  Executive Order 13988, the second document cited by Defendants, is no more specific.  The order acknowledges that, "laws that prohibit sex discrimination . . . prohibit discrimination on the basis of gender identity or sexual orientation," and directs agencies to reconsider agency actions taken under any statute that prohibits sex discrimination, "[w]ithin 100 days" of the order, that is, by April 30, 2021.  Exec. Order No. 13988, 86 Fed. Reg. at 7023, 7024 (citing *Bostock*, 140 S. Ct. 1731).  Shortly after that deadline had passed, HHS issued a Notification of Interpretation and Enforcement, which is the third document cited by Defendants in support of voluntary remand.  *See Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments*

*of 1972*, 86 Fed. Reg. 27,984 (May 25, 2021).  The Notification states that, on May 10, 2021, HHS began interpreting Section 1557's prohibition of discrimination on the basis of sex to include discrimination on the basis of sexual orientation and gender identity.  *Id.* at 27,984.  Finally, Defendants cite HHS's intention, stated in the Spring Unified Agenda of Federal Regulatory and Deregulatory Actions, to issue a Notice of Proposed Rulemaking on Section 1557 by April 2022. Frohboese Decl. ¶ 7.

Plaintiffs agree with and applaud those executive actions, but they are not a valid basis for voluntary remand.  Where, as here, an agency "has not confessed error," but makes a "novel, last second motion to remand" based on a "policy statement" that "is directed only towards the future" and "does not bind the [agency] to a result," the court should reject the agency's request for voluntary remand.  *Lutheran Church Missouri-Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998). Thus, for example, in *Lutheran*, the D.C. Circuit rejected the Federal Communications Commission's request for a voluntary remand in circumstances similar to those here.  *Id.*  There, the FCC had issued an order finding that a church had violated the agency's equal employment opportunity regulations through the use of religious hiring preferences and inadequate minority recruiting at the church's radio stations.  The church then challenged the order, arguing that the agency had violated the church's constitutionally-protected rights to religious freedom and equal protection of the law.  "Almost two months after" the court heard argument on the merits of the appeal, the government filed a motion for voluntary remand, citing a new "policy statement" indicating that the FCC would permit religious broadcasters to use a religious preference for all positions.  *Id.* at 348.  The D.C. Circuit denied that request.  As the court pointed out, although the agency had stated an intention to reconsider the challenged order, the agency had not actually "confessed error," and the agency "could make no representations to the court concerning what

sort of order might be adopted in the future." *Id*. at 349.  The D.C. Circuit explained:  "We simply do not understand, as a matter of administrative law, how we could consider a post-argument 'policy statement,' which . . . does not bind the Commission to a result in any particular case."  *Id*.

*Lutheran* is on all fours with this case.  Just as in *Lutheran*, both the timing of and the purported motivation for Defendants' motion reveal that Defendants' request for voluntary remand is made in bad faith.  *See SKF*, 254 F.3d at 1029 (an agency request for voluntary remand is "in bad faith" if it comes at the "last second" and is based only on "prospective policy statement[s]") (quoting *Lutheran*, 141 F.3d at 349).  None of the executive actions cited by Defendants in support of their remand motion are new developments.  President Biden issued Executive Orders 13985 and 13988 in January.  HHS issued its Notification of Interpretation and Enforcement in May.  And the Unified Agenda of Federal Regulatory and Deregulatory Actions was released in June.  Yet the Defendants waited until September to file their motion for voluntary remand.  In fact, Defendants' first mention of a motion for voluntary remand did not come until after this Court had issued a decision on Defendants motion to dismiss, and Defendants were faced with the prospect of answering the complaint.  This cannot be coincidental.  *See also, e.g.*, *Byrd v. Heckler*, 576 F. Supp. 549, 550 (D.D.C. 1983) (denying remand where the government waited "until the eleventh hour . . . [to] further delay by moving for voluntary remand"); *Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 175 (1996) (acknowledging that post-litigation agency interpretations may be the product of unfair or manipulative Government litigation strategies, and that "late changes of position by the Government" are viewed with skepticism).

And just as in *Lutheran*, Defendants have not confessed error, and the executive actions cited by Defendants are nonbinding, prospective policy statements that do not guarantee that Plaintiffs will receive the relief they seek.  The Unified Agenda notes that HHS anticipates issuing

an NPRM by April 2022, but it says nothing about the content of that NPRM and whether it will correct the Rollback Rule's errors.  The executive actions that Defendants cite do not fill that gap. For example, Plaintiffs' Amended Complaint challenges the Rollback Rule's deletion of "pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions" from the 2016 Rule's definition of "on the basis of sex," Am. Compl. ¶¶ 158, 202–203, 258–264, 272, 276, 279; the Rollback Rule's narrowing of the definition of "health program or activity," *id.* ¶¶ 318–330; and the Rollback Rule's importation of blanket religious and abortion exemptions from the Title IX context, *id.* ¶¶ 281–303.  Yet none of those unlawful provisions fall clearly within the scope of the cited Executive Orders.  And while Executive Order 13988 requires HHS to reconsider the Rollback Rule's inconsistency with *Bostock* and with the administration policy expressed in the Order, the Order does not ensure that specific and meaningful action to mitigate ongoing harm arising from the Rollback Rule will occur.

Indeed, the denial of the voluntary remand is even more appropriate here than in *Lutheran* because Defendants have already sought a voluntary remand in order to avoid a court order definitively interpreting Section 1557.  Shortly after the 2016 Rule took effect, a group of states and religious healthcare providers brought suit in the Northern District of Texas, attempting to enjoin the rule.  *Franciscan All., Inc. v. Burwell*, Case No. 7:16-cv-00108-O (N.D. Tex. Aug. 23, 2016), ECF No. 1. Similar coalitions sued in the District of North Dakota not long after.  *Religious Sisters of Mercy v. Burwell*, Case No. 3:16-cv-00386-PDW-ARS (D.N.D. Nov. 7, 2016), ECF No. 1; *Cath. Benefits Assoc'n v. Burwell*, Case No. 3:16-cv-00432-PDW-ARS (D.N.D. Dec. 28, 2016), ECF No. 1.[2]  The Texas court entered a nationwide preliminary injunction barring enforcement of

---

[2] The District of North Dakota cases were later consolidated.  *See Religious Sisters of Mercy v. Burwell*, Case No. 3:16-cv-00386 (D.N.D. Jan. 23, 2017), ECF No. 37.

the 2016 Rule insofar as it prohibited discrimination based on "gender identity" and "termination of pregnancy," *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016), and the North Dakota court stayed enforcement of the 2016 Rule against the named Plaintiffs, *see Religious Sisters of Mercy v. Burwell*, Case No. 3:16-cv-00386-PDW-ARS (D.N.D. Dec. 30, 2016), ECF No. 23; *Id.* (D.N.D. Jan. 23, 2017), ECF No. 36.   After the inauguration of a new presidential administration, Defendants requested a voluntary remand and stay in those cases to permit the agency "to assess the Rule's necessity, reasonableness, and efficacy—or lack thereof— and in light of Plaintiffs' challenges to it," *Religious Sisters of Mercy v. Burwell*, Case No. 3:16-cv-00386-PDW-ARS (D.N.D. May 26, 2017), ECF No. 45, and argued that the "threat of ongoing litigation" could "distract" the agency from its rulemaking proceedings, *Franciscan All., Inc. v. Price*, No. 7:16-cv-00108-O, 2017 WL 3616652, at *5 (N.D. Tex. July 10, 2017) (quoting hearing transcript).[3]   Defendants say the same thing now.  *See* Govt. Mem. 6 ("Remand would allow HHS to consider the issues raised in Plaintiffs' Amended Complaint in the context of its ongoing reconsideration of the rule."); *id.* at 11 (arguing that "ongoing litigation could interfere with HHS's rulemaking, as HHS would have to prioritize pending litigation deadlines").[4]

---

[3] The courts denied the request for a remand, but granted the request for a stay.  *See Price*, 2017 WL 3616652, at *5; *see also Religious Sisters of Mercy v. Burwell*, Case No. 3:16-cv-00386-PDW-ARS (D.N.D. Aug. 24, 2017), ECF No. 56.

[4] For similar reasons, this Court should view with skepticism Defendants' assertion that HHS will issue NPRM imminently.  *See* Govt. Mem. 6  (stating that HHS "anticipates issuing an [NPRM] no later than April 2022").  Recent history indicates that the rulemaking process may take much longer to get off the ground.  The Trump Administration's May 2017 motion in *Franciscan All., Inc. v. Burwell* for voluntary remand made a similar claim.  *See Franciscan All., Inc. v. Burwell*, Case No. 7:16-cv-00108-O (N.D. Tex. May 2, 2017), ECF No. 92 at 3 ("HHS takes the concerns of the Court seriously and should be given the opportunity to initiate rulemaking proceedings to reconsider the Rule.").  The Notice of Proposed Rulemaking was not released for another two years from that time.  *See* HHS Press Office, *HHS Proposes to Revise ACA Section 1557 Rule to Enforce Civil Rights in Healthcare, Conform to Law, and Eliminate Billions in Unnecessary Costs*, HHS.gov (May 24, 2019).  This is despite a series of aspirational deadlines and promises to the

Moreover, although Defendants say that "[r]emand would give HHS the opportunity to fully explore and address" the issues that Plaintiffs raise in the Amended Complaint, *Id.* at 8–9, those issues have already been well-ventilated before the agency—*twice*—first, in the rulemaking that resulted in the 2016 Rule and then, once again, in the rulemaking that resulted in the Rollback Rule.  Because HHS has already considered Plaintiffs' arguments and the applicable law, and because Section 1557 unambiguously requires the interpretations that Plaintiffs advance, remand is pointless.  *See George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992) (courts should "retain and decide the issue" where "a remand would be futile . . . as only one disposition is possible as a matter of law"); *see also, e.g.*, *Zhao  v. Gonzales*, 404 F.3d 295, 311 (5th Cir. 2005) (refusing to remand where the agency considered the complaining party's request and arguments, but abused its discretion in rejecting them based on incorrect view of applicable law); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (similar).

And to the extent that Defendants argue that remand is appropriate so that HHS can "develop a new administrative record" under "a new agency decisionmaker," Govt. Mem. 9, Defendants admit to seeking remand for an improper purpose.  A new rulemaking is not a "substantial and legitimate" reason for voluntary remand. *SKF*, 254 F.3d at 1029.

---

federal district court that the rulemaking was imminent. *See, e.g., Franciscan All., Inc. v. Burwell,* No. 7:16-cv-00108-O (N.D. Tex. April 16, 2018), ECF No. 113  (reporting to the Court that the proposed rule was submitted to OMB on April 13, 2018 and that "Defendants will provide the Court, and the Plaintiffs, with the text of the proposed rule as soon as it has been published in the Federal Register and is available to the public.")  It took more than an additional year for the Rollback Rule to become final.  Am. Compl. at ¶ 1(noting that the Rollback Rule was promulgated on June 19, 2020).  Nor does the earlier history of Section 1557 Rulemaking under the Obama Administration provide any more reason to be optimistic.  From the passage of the Affordable Care Act in 2010, *id.* at ¶ 86, it took the Obama Administration six years to finalize its Section 1557 rulemaking. *Id* at ¶ 7.  The recent history of administrative rulemaking for Section 1557 gives the Court every reason to view the Defendants' claims of imminent rulemaking in its current motion skeptically.

Voluntary remands "allow agencies to correct their own mistakes without expending the resources of the court in reviewing a record that is admittedly incomplete or incorrect." *Bennett v. Murphy*, Civil Action No. 14-10275-FDS, 2016 WL 1449571, at *1 (D. Mass. Apr. 13, 2016). But they do not permit the agency to develop an entirely new record crafted to withstand judicial review and to unfairly prejudice plaintiffs. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–169 (1962) (holding that court could not accept "post hoc rationalizations for agency action" and that agency's discretionary order had to be "upheld, if at all, on the same basis articulated in the order by the agency itself"). That is why a court may remand for further development of the administrative record if it is incomplete, *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), but remand is inappropriate when a regulation is inconsistent with the statute that the agency purports to interpret, *see* 5 U.S.C. § 706. An agency "is not entitled to a second bite of the apple just because it made a poor decision—if that were the case, administrative law would be a never ending loop from which aggrieved parties would never receive justice." *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 895 F. Supp. 316, 319 (D.D.C. 1995).

Defendants also argue that remand "promotes important jurisprudential interests" like "letting the administrative process run its course before binding parties to a judicial decision," and "weighty institutional interests," like "deference to Congress' delegation of authority to [the agency]." Govt. Mem. 9–10. But the administrative process has already run its course: the Rollback Rule is a final agency action. At this point, HHS is entitled only to the deference that any reviewing court grants an agency regulation that has been challenged as contrary to law. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). And, of course, an agency gets no deference for an interpretation of a statute that runs contrary to the statute's plain terms. *See id*. Additionally, to the extent that Defendants argue that HHS cannot lawfully commit

11

to taking a particular position on the interpretation of Section 1557 in the upcoming notice of proposed rulemaking, that's simply untrue. Agencies regularly resolve lawsuits challenging agency regulations by committing to propose a new rule that grants the relief sought in the plaintiff's complaint. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (recounting procedural history and observing that "EPA entered into a settlement agreement with the Sierra Club" in which "EPA agreed to propose . . . a new rule addressing certain issues raised by the Sierra Club"); *Washington v. U.S. Dep't of State*, 420 F. Supp. 3d 1130, 1136, 1137 (W.D. Wash. 2019) (recounting procedural history and observing that a party had "filed a lawsuit" challenging a regulation, after which "the parties reached a tentative settlement agreement," pursuant to which "[t]he federal government specifically agreed, among other things, to publish a notice of proposed rulemaking" consistent with plaintiffs' position); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960, 964 (D. Alaska 2011) (similar); *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1270 (D. Colo. 2010) (similar).

    2. *Voluntary remand would not conserve judicial resources.*

Defendants argue that a voluntary remand would "promote[] judicial economy and conserve[] the parties' and the Court's resources." Govt. Mem. 11. As an initial matter, Defendants cannot be heard to complain about a waste of resources after they waited for the Court to issue a decision on the motion to dismiss before filing a motion for voluntary remand. The policy statements that Defendants cite as the basis for their remand motion were each issued before Plaintiffs gathered supplemental evidence in support of their opposition to the Defendants' motion to dismiss, before both parties filed supplemental briefing on that motion, and before the Court issued its 45-page memorandum opinion and order on that motion. *See Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004) (recognizing that "an agency's reconsideration of its own decision may in some contexts be . . . abusive."); *see also,*

*e.g.*, *Lewis v. Sec'y of Navy*, Civil No. 10-0842 (RBW), 2014 WL 12787221, at *4 (D.D.C. Sept. 2, 2014) (denying request for voluntary remand where the defendant's request for remand appeared to be an attempt to "deprive the plaintiff of standing to challenge the lawfulness of the Navy regulation").

For similar reasons, granting a voluntary remand would result in a waste—rather than a savings—of judicial and litigant resources because the parties have already invested substantial resources in establishing this Court's jurisdiction, and Defendants refuse to acknowledge that the Rollback Rule is inconsistent with Section 1557.  Rather than bring closure, a voluntary remand may only postpone correction of HHS's legal errors, and at that point, the parties may have to litigate standing all over again.  This is a far cry from the type of case in which a court should grant voluntary remand in order to conserve judicial resources.  For example, in *SKF*, "[r]ather than defending" its decision, the agency confessed its error and assured the plaintiff that evidence would now be included and considered in a decision which would likely change the result below.  254 F.3d at 1026, 1029.  Similarly, in *Citizens Against Pellissippi Parkway*, the agency came forward almost immediately upon the commencement of the litigation and confessed that it had proceeded incorrectly under its own regulations and stated its intention to correct that situation.  375 F.3d at 415.  By contrast, in this case, a year has passed since Plaintiffs filed the Amended Complaint.  In that time, the parties have litigated the Court's jurisdiction, the scope of the Court's review, and the plausibility of the violations alleged in the complaint.  And Defendants have made no confession of error, nor made any assurances that they will replace the Rollback Rule with a rule that addresses the concerns raised in Plaintiffs' Amended Complaint.  Based on the substantial litigation that has already occurred in this case, a voluntary remand is more likely to result in a waste, rather than a savings, of judicial and litigant resources.

13

3.   *Voluntary remand would unduly prejudice Plaintiffs.*

Although Defendants concede that "HHS cannot provide total clarity as to exactly how agency reconsideration will affect Plaintiffs' claims," Defendants still argue that the mere possibility that "the upcoming rulemaking . . . may well resolve, or at least substantially narrow, Plaintiffs' claims," is sufficient to show that Plaintiffs would not be unduly prejudiced by voluntary remand.  Govt. Mem. 13.  Defendants also quote language from First Circuit decisions that appears to support that proposition.  *See, e.g.*, *id.* ("'A pessimistic prediction or a hunch that further administrative proceedings will prove unproductive is not enough.'") (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 78 (1st Cir. 1997)); *id.* ("Moreover, '[t]he duration of administrative proceedings, without more, cannot suffice to demonstrate' undue prejudice from proceeding before the agency.") (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016)).

However, Defendants' assertion that Plaintiffs are not prejudiced by a remand without vacatur is incorrect, and Defendants' quotations from First Circuit cases are misleading.  Specifically, Defendants rely on the First Circuit's analysis of administrative exhaustion requirements, *see* Govt. Mem. 9, 13 (repeatedly citing *Anversa*, 835 F.3d 167; *Portela-Gonzalez*, 109 F.3d 74).  But none of the claims in Plaintiffs' Amended Complaint have an administrative exhaustion requirement—the Rollback Rule is a final agency decision that is ripe for review under the APA.  *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993) ("Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under [the APA].");  5 U.S.C. § 551(13) (defining an agency action to include an "agency rule").  Moreover, courts that are actually discussing voluntary remand—and not the separate doctrine of administrative exhaustion that is inapplicable here—routinely find that non-moving parties are unduly prejudiced by a voluntary remand where, as is the case here, the agency

14

"ma[kes] no offer to vacate the rule," and proposes to simply leave the plaintiffs "subject to a rule they claimed was invalid." *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000); *see also, e.g.*, *Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414, 436–437 (D.C. Cir. 2018) (per curiam) (denying voluntary remand because the plaintiff's "claim involves a question—the scope of the [agency's] statutory authority—that is intertwined with any exercise of agency discretion going forward"); *Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 254, 271 (D.D.C. 2014) (denying request to remand without vacatur based on "the danger of leaving the current rule in place").

Defendants next argue that Plaintiffs will not be prejudiced by a voluntary remand because remand is "the relief typically provided when a litigant is successful on an APA claim." Govt. Mem. 15. But remand is not the only relief that a successful APA litigant can receive. A merits determination based on a full record can bind the agency to a particular regulatory path in a way that voluntary remand cannot. For that reason, "the question of whether to remand when an agency makes a voluntary remand request associated with a change in agency interpretation hinges upon whether the agency's interpretation is entitled to deference under [*Chevron*]," such that "'[i]f there is a step one *Chevron* issue—that is, an issue as to whether the agency is either compelled or forbidden by the governing statute to reach a different result—a reviewing court'" may choose to "'decide the statutory issue.'" *Wagner v. Principi*, 370 F.3d 1089, 1092 (Fed. Cir. 2004) (quoting *SKF*, 254 F.3d at 1029–30). Plaintiffs allege that, in the Rollback Rule, HHS took several positions that are foreclosed by Section 1557 at *Chevron* step one. *See* Am. Compl. ¶¶ 397–402. Therefore, remand is inappropriate.

Finally, Defendants argue that voluntary remand is appropriate because "Plaintiffs did not move for preliminary injunctive relief." Govt. Mem. 16. Defendants cite no cases at all that grant

a defendant's request for voluntary remand based on a plaintiff's decision not to move for a preliminary injunction. Instead, Defendants once again rely on a misleading quotation pulled from a case discussing an unrelated doctrine. *See id.* ("'There is every reason to think [a] district court could timely resolve a case' if any Plaintiff is about to face imminent harm by a participant in the health system that they believe to be covered by Section 1557.") (quoting *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 73 (1st Cir. 2003)). Defendants rely on the First Circuit's analysis regarding the jurisdictional requirement of ripeness, *see id.* (quoting *McInnis-Misenor*, 319 F.3d 63), and this Court has already rejected the Defendants' ripeness arguments, *see* ECF No. 63 at 36. In addition to Defendants' failure to ground its argument in the correct legal framework, the argument is irrelevant because there is no overlap between the analysis under which courts grant a plaintiff's request for preliminary injunctions and the analysis under which courts grant a defendant's request for voluntary remand. *Compare Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) *with SKF*, 254 F.3d at 1029.[5]

### B. If This Court Grants The Defendants' Request For Voluntary Remand Over Plaintiffs' Objections, The Rollback Rule Must Be Vacated.

Defendants further argue that, if this Court grants remand, the Court should leave the Rollback Rule in place. But remand without vacatur is not a remedy that is available under the

---

[5] Defendants' reliance on the *Whitman-Walker* decision is misplaced. Govt. Mem. at 14 (citing *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. CV 20-1630 (JEB), 2021 WL 4033072, at *3 (D.D.C. Sept. 3, 2021)). That district court did not grant a motion to remand, but rather denied the plaintiffs' request to lift a stay to which they had previously consented. *Id.* at *1. Thus, that case presented a different question entirely. And, given its posture, the plaintiffs in that case would have maintained the ability to seek to lift the stay again in the event of delay—an option that would no longer be available to Plaintiffs here if this Court were to grant the instant motion and dismiss this case. Moreover, in denying the motion the Court focused on several factors not present in the instant case, including that the Court had not yet decided the government's lengthy motion to dismiss, that the extant injunctions covered "the heart of [those] Plaintiffs' objections" to the Rollback Rule, and that the Court had already expressed skepticism regarding those plaintiffs' standing for claims not already covered by extant injunctions. *Id.* at *2, *3.

Administrative Procedure Act.  That was the explicit holding of the First Circuit in *Harrington v. Chao*, 280 F.3d 50 (1st Cir. 2002).  There, the Secretary of Labor declined to initiate a union enforcement action and issued a brief "Statement of Reasons" for its action.  *Id.* at 52.  On review, the First Circuit concluded that the Statement violated the APA because it failed to sufficiently explain the reasoning for the decision and vacated the Secretary's decision.  *Id.* at 61.  Explaining its decision to remand with vacatur, the Court reasoned that, "[i]t is not a significant burden on her resources to ask her to explain her decision in a more reasoned fashion," because "[t]he Secretary is already committed by statute to expending resources in this area and has presumably reviewed all the pertinent factual materials presented." *Id*. at 60.  "Nor do we disrupt anything by vacating her decision; vacation is a proper remedy when an agency fails to explain its reasoning adequately."  *Id*; *see also id*. (citing Brian S. Prestes, *Remanding Without Vacating Agency Action*, 32 Seton Hall L. Rev. 108 (2001) with approval as an article that "criticiz[es] the practice of remanding without vacating").

To be sure, not every court agrees with the First Circuit.  Some courts outside the First Circuit permit remand without vacatur "[i]n rare cases."  *United Steel*, 925 F.3d at 1287; *see also Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–151 (D.C. Cir. 1993) (holding that in contrast to a facially invalid agency action, an action that is merely "inadequately supported," "need not necessarily be vacated" if the error was minor and vacatur would be unduly disruptive).[6]  But First Circuit precedent—not the D.C. Circuit precedent—is binding on this

---

[6] Even in those courts, the propriety of the practice of remand without vacatur is hotly contested. *Compare, e.g.*, *Checkosky v. SEC*, 23 F.3d 452, 463 (D.C. Cir. 1994) (separate opinion of Silberman, J.) ("Since 'courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review,' reviewing courts will often and quite properly pause before exercising full judicial review and remand to the agency for a more complete explanation of a troubling aspect of the agency's decision.") (citation omitted), with *id.* at 491 (opinion of Randolph, J.) ("Once a reviewing court determines that the agency has not adequately

Court.  *See Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004).  And

in any event, the D.C. Circuit's limited exception to the APA's requirement of vacatur is inapposite

here.  That court permits remand without vacatur only where "an agency may be able readily to

cure a defect in its explanation of a decision."  *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d

193, 198 (D.C. Cir. 2009); *see also, e.g.*, *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244

(D.C. Cir. 2013) (remanding without vacatur where there was a "failure of explanation").  But the

D.C. Circuit does not permit remand without vacatur where, as is the case here, an agency's rule

is contrary to its governing statute and therefore cannot be justified on any record.

### C.    Regardless Of Whether This Court Grants The Government's Request For Voluntary Remand, This Court Should Not Dismiss Plaintiffs' Suit.

Defendants also state that if remand without vacatur is granted the Court should "dismiss

this action without prejudice."  Govt. Mem. 17.  Because Defendants fail to provide any argument

in support of this statement, the Court can deem this issue waived.  *United States v. Zannino*, 895

F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived.").  Defendants are also just wrong.  "'[A]

federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'"

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Lexmark Int'l, Inc. v. Static

Control Components, Inc.*, 572 U.S. 118, 126 (2014)).  Therefore, when a voluntary remand is

granted, the appropriate course is to stay the litigation pending the outcome of the voluntary

remand.  *See, e.g.*, *Ala. Env't Council v. Administrator, U.S. E.P.A.*, 711 F.3d 1277, 1291 (11th

Cir. 2013) (observing that the case was previously "remanded to the EPA on a limited basis for

purposes of reconsidering the final rule under review, and proceedings . . . stayed pending

---

explained its decision, the [APA] requires the court—in the absence of any contrary statute—to
vacate the agency's action.").

completion of such reconsideration," with directions for EPA to provide status reports every 60 days); *Code v. McHugh*, 139 F. Supp. 3d 465, 472 (D.D.C. 2015) ("This case will be stayed pending the [agency's] final decision on remand"); *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 26 (D.D.C. 2008) ("all proceedings in this case will be stayed pending final Corps action on remand"). Therefore, if, notwithstanding plaintiffs' opposition, a voluntary remand without vacatur is granted, this case should be stayed, not dismissed.

## II.   THIS COURT SHOULD DENY DEFENDANTS' RENEWED REQUEST FOR A STAY.

Defendants' alternative request for a stay fares no better. The Court should also deem this issue waived. Defendants devote just four sentences to the argument. *See Zannino*, 895 F.2d at 17. And Defendants fail to mention—much less distinguish—this Court's ruling denying Defendants' previous request for a stay. *See* ECF No. 48 (noting that the stay motion was denied for reasons stated on the record). Nor could they. Nothing has changed since this Court denied Defendants' last request for a stay. The equities still tilt decisively in Plaintiffs' favor. *See Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992) ("[S]tays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced.").

The sole hardship for Defendants mentioned in their brief is the claim that "ongoing litigation could interfere with HHS's rulemaking, as HHS would have to prioritize pending litigation deadlines." Govt. Mem. 13. Defendants carry the burden of establishing that a stay is appropriate, yet supply only one conclusory statement in a declaration that continuing with litigation would consume agency resources. *Id*. at 13 (citing Frohboese Decl. ¶ 14). Not only is that statement too thin a reed on which to rest a stay, it is also demonstrably untrue. Defendants will not be forced to expend significant resources litigating this matter: Defendants have already

19

compiled and produced the administrative record relevant to the Rollback Rule in the parallel litigation challenging the rule. *See* Index to Admin. Record, *State of New York v. U.S. Dep't of Health and Hum. Servs.*, Case No. 1:20-cv-05583-AKH (S.D.N.Y. Nov. 6, 2020), ECF No. 103-2. Defendants do not explain what other substantial resources from HHS—rather than the Department of Justice—that this litigation will require.

Plaintiffs, on the other hand, will suffer significant harm given the extended time period that would elapse between entry of a stay and finalizing a new rule. HHS does not intend to issue a Notice of Proposed Rulemaking until at least April 2022 and Defendants offer no proposed timeline for finalizing a rule. In any event, a stay would likely last until late into 2023. *See Cardelli v. DAE Aviation Enters., Corp.*, No. 2:11-CV-217-NT, 2012 WL 983584, at *1 (D. Me. Mar. 22, 2012) (finding a stay was "inadvisable" when, among other things, stay would delay case for over a year). During this time period, Plaintiffs face uncertainty and ongoing harm caused by the patchy enforcement landscape created by the Rollback Rule and competing injunctions. *See BAGLY*, 2021 WL 3667760, at *4 ("It is true that the 2016 Rule, its repeal by the 2020 Rule, President Biden's Executive Order (see below), and potentially cross-cutting injunctions have created a difficult terrain to follow.") (Saris, J.); *see also* ECF No. 42 at 6–10 (Plaintiffs' stay opposition, further detailing the harms that Plaintiffs would suffer as a result of a stay).

Based on these continuing harms stemming from the Rollback Rule, an open-ended stay of proceedings is unwarranted in this case. Defendants have not demonstrated that denying the stay would cause hardship sufficient to justify placing proceedings on hold in light of ongoing harm to the Plaintiffs. The Court should therefore deny Defendants' request for a stay.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Voluntary Remand and their renewed request for a stay.

Dated: September 29, 2021

Kevin Costello (BBO No. 669100)
Maryanne Tomazic (admitted pro hac vice)
CENTER FOR HEALTH LAW & POLICY
INNOVATION
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
Phone: 617.496.0901
kcostello@law.harvard.edu

Sunu Chandy (admitted pro hac vice)
Michelle Banker (admitted pro hac vice)
Dorianne Mason (admitted pro hac vice)
NATIONAL WOMEN'S LAW CENTER
11 Dupont Circle NW Suite 800
Washington, DC 20036
Phone: 202.588.5180
schandy@nwlc.org
mbanker@nwlc.org
lgorodetsky@nwlc.org
dmason@nwlc.org

David Brown (admitted pro hac vice)
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
Phone: 646.862.9396
dbrown@transgenderlegal.org
nlewis@transgenderlegal.org
acaraballo@transgenderlegal.org

Respectfully submitted,

/s/ William H. Kettlewell
William H. Kettlewell (BBO No. 270320)
HOGAN LOVELLS US LLP
125 High Street
Suite 2010
Boston, MA 02110
Phone: 617.371.1000
bill.kettlewell@hoganlovells.com

Jessica L. Ellsworth (admitted pro hac vice)
Jo-Ann Tamila Sagar (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Phone: 202.637.5600
jessica.ellsworth@hoganlovells.com
jo-ann.sagar@hoganlovells.com
erin.chapman@hoganlovells.com

Peter W. Bautz (admitted pro hac vice)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Phone: 212.918.3000
kristina.alekseyeva@hoganlovells.com
peter.bautz@hoganlovells.com

Lynly Egyes (admitted pro hac vice)
Dale Melchert (admitted pro hac vice)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: 510.587.9696
lynly@transgenderlawcenter.org
dale@transgenderlawcenter.org

*Counsel for Plaintiffs*