```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


   BOSTON ALLIANCE OF GAY, LESBIAN,   )
   BISEXUAL AND TRANSGENDER YOUTH     )
   (BAGLY), et al,                    )
                                      )
                 Plaintiffs           )  CA No. 20-11297-PBS
                                      )  Pages 1 - 19
         -vs-                         )
                                      )
   UNITED STATES DEPARTMENT OF        )
   HEALTH AND HUMAN SERVICES,         )
   et al,                             )
                                      )
                 Defendants           )
```

**MOTION HEARING VIA VIDEO**

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

United States District Court
1 Courthouse Way
Boston, Massachusetts  02210
June 2, 2022, 9:34 a.m.

LEE A. MARZILLI
OFFICIAL COURT REPORTER
United States District Court
1 Courthouse Way, Room 7200
Boston, MA  02210
leemarz@aol.com

A P P E A R A N C E S:

    WILLIAM H. KETTLEWELL, ESQ., Hogan Lovells US LLP, 125 High Street, Suite 2010, Boston, Massachusetts, 02110, for the Plaintiffs.

    JO-ANN SAGAR, ESQ., Hogan Lovells US LLP, Columbia Square, 555 13th Street NW, Washington, DC, 20004, for the Plaintiffs.

    LIAM C. HOLLAND, ESQ., United States Department of Justice, Federal Programs Branch, PO Box 883, Washington, DC, 20044, for the Defendants.

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  Good morning, Judge.
 3            THE COURT:  Good morning to everyone.
 4            MR. KETTLEWELL:  Good morning, your Honor.
 5            THE CLERK:  I'll call the case.  The Court calls Civil
 6   Action 20-11297, BAGLY v. United States Department of Health
 7   and Human Services, et al.
 8            Could counsel please identify themselves.
 9            MR. KETTLEWELL:  Yes, your Honor.  William Kettlewell
10   together with Jo-Ann Sagar for the plaintiffs.
11            MR. HOLLAND:  And this is Liam Holland for the
12   government, your Honor.
13            THE COURT:  Good.  Well, I wasn't sure whether to call
14   this a status conference or a Rule 16 conference, but I think
15   it's time to get going on this case.  So what do you all -- I
16   have an old scheduling order.  I'm not sure if it's still
17   appropriate, but, as I understand it -- maybe Mr. Holland can
18   help me -- there's been no proposed rulemaking or rule issued
19   yet?
20            MR. HOLLAND:  Your Honor, in October the Court joined
21   every other court presiding over the 2020 rule in staying
22   proceedings in this case because it recognized that it's not
23   pragmatic to continue wasting judicial and party resources on
24   this litigation when they are diligently working to address the
25   rule administratively.  My client HHS has submitted the
```

```
 1   proposed rule to OIRA.  It did so in --
 2              THE COURT:  Wait, stop.  What's that?
 3              MR. HOLLAND:  Sorry.  The Office of Management and
 4   Budget, Office of Information and Regulatory Affairs.
 5              THE COURT:  You thought I'd know what OIRA was?
 6              MR. HOLLAND:  I'm sorry, your Honor.  I'm in the weeds
 7   of this all the time and I -- no.  So let me just explain that
 8   OIRA --
 9              THE COURT:  Is that the thing Cass Sunstein set up?
10              MR. HOLLAND:  I think it was around before Cass
11   Sunstein, but he was definitely actively involved in it and
12   what it is today.  But under executive order, HHS is not
13   allowed to put the proposed rule out publicly at this point
14   before it undergoes a brief review by the Office of Information
15   and Regulatory Affairs.  That review has already been ongoing
16   since March 22 when HHS submitted the proposed rule to OIRA, so
17   there is every reason to believe that the proposed rule will be
18   out very, very soon.  And so for the same reasons that this
19   Court --
20              THE COURT:  And how long is that process?  Probably by
21   the time -- you have to usually have 60 or 90 days' worth of
22   comments once it's issued, and then it usually takes another
23   year to issue a rule, right?
24              MR. HOLLAND:  So, like, look, your Honor, you're kind
25   of, like, asking me when the jury is coming back with its
```

```
 1    verdict, right?
 2            THE COURT:  I know, but that's usually days, not
 3    years.
 4            MR. HOLLAND:  So we're, like, pausing this litigation
 5    because another case has its jury out.  You know, like, the
 6    point is, there's no guarantee this litigation is going to end
 7    up moving any more quickly.  There's no guarantee this
 8    litigation is going to end up producing the outcome the
 9    plaintiffs want.  Meanwhile, the agency is doing the very
10    thing -- it's addressing the very things the plaintiffs want.
11            So I've never encountered -- when we're in civil
12    litigation, the defendants are basically saying, you know,
13    we're doing this, right?  So why would we move forward in this
14    case when we're already doing this?  And there's no reason to
15    believe --
16            THE COURT:  Because it's so slow.  It's so slow.  It
17    will be like the Trump administration issued it on the eve of
18    its leaving office, you know?  Just it's not going to even
19    issue for a couple of years.  I just need something -- this is
20    what I'm going to do.
21            MR. HOLLAND:  Your Honor, may I address that because
22    why don't we -- I'm comparing -- the Obama administration's
23    proposed rule on OIRA only took four months and four days.  So
24    this has been around since March 22 --
25            THE COURT:  Four months -- excuse me -- it took four
```

1    months, so now it's been two and a half months?  Is that it?
2    That's your prediction, that it's going to be out in four
3    months?
4                MR. HOLLAND:  I am not here to make predictions.  You
5    know, I can't predict how long this litigation is going to
6    take.  But at the same time, the plaintiffs have filed some
7    status report where they say, like, oh, the Trump
8    administration's proposed rule took a year.  I'm just saying
9    that there is no basis for speculating that that's going to
10   take that -- that's completely out-of-the-question ridiculous
11   when there is every reason to believe that this thing is coming
12   out, like, very soon.  And I'm just saying, for an additional
13   data point, the Obama administration's proposed rule that you
14   might think would be more closely aligned with what this
15   administration is doing, I don't know --
16               THE COURT:  Well, of course it's more closely aligned,
17   I agree with that, with Obama than with Trump.  I for sure
18   agree with that.  But that said, I think what we should do is
19   set a schedule, and this may help them move it along.  And if
20   in fact a full-blown notice gets published that resolves a lot
21   of the issues, at that point you can move for a stay again; I'm
22   open to that.  But I said last time, and I'll sound like I'm
23   false, that this was the end of what I was going to do, and
24   so --
25               MR. HOLLAND:  Your Honor --

```
 1              THE COURT:  Can I just say this:  I understand,
 2   Mr. Holland, but I am going to set a schedule.  And then if the
 3   notice comes out, I will be open to stay it.  But we've got to
 4   start putting together this -- have you started putting
 5   together an administrative record?
 6              MR. HOLLAND:  Well, the agency, you know, compiled the
 7   administrative record many years ago.  I believe that
 8   administrative record still exists.  I have spoken with the
 9   agency about getting it together for this proceeding, if
10   necessary, how long it might take, and they still haven't got
11   back to me about that.  So I can let you know.  I mean, earlier
12   we said about 45 days would be enough time, but it's a very,
13   very large rule, I mean, a very, very large --
14              THE COURT:  No, I agree, and I'm not eager to jump
15   into it if the whole thing is moot.
16              MR. HOLLAND:  Can I --
17              THE COURT:  No.  I've got a schedule, an old schedule,
18   really old, a really old schedule.  I forget when it was issued
19   but it was many moons ago.  Two years ago maybe?  We've been
20   interrupted by COVID and the hope that something would come
21   out.  I've gone through multiple law clerks.  Realistically, I
22   won't be able to deal with this issue with this traunch of law
23   clerks, and realistically this won't be happening till next
24   year anyway, I mean, next clerkship year or academic year.  So
25   I'm trying to just put something in place, and if the rule
```

1  issues, come back to me.

2              MR. HOLLAND: On that point, your Honor, may I just
3  suggest that the Court order something that suggests that if we
4  issue notice to the Court and provide a copy of the proposed
5  rule, that the Court stay deadlines and provide the parties
6  with the requirement that they meet and confer about what the
7  proposed rule says, and to meet again about whether it makes
8  sense to go forward?

9              MS. SAGAR: Your Honor, before you rule on that, could
09:41 10  I be heard in response to that? It's always been the
11  plaintiffs' position that our clients are being harmed so long
12  as the Rollback Rule remains in effect. The event that
13  Mr. Holland is driving towards is the issuance of a notice of
14  proposed rulemaking, which does not change the rules that
15  govern the insurers, the rules that govern the healthcare
16  providers that are causing the harms to my clients. The only
17  thing that would change that would be the issuance of a final
18  rule.

19              Where we are now as compared to where we were in the
09:42 20  last administration, you know, as your Honor noted, the rule
21  sat with O&B for a year, and then, after that, there was notice
22  and comment. After that, the agency analyzed the notice and
23  comment. The final rule didn't come out until another year
24  after that, so, you know, on the schedule, what happened last
25  time, two years until we would get relief. So, you know,

1  plaintiffs would not be comfortable with an automatic stay
2  being put in effect.
3          THE COURT:  I'm not doing an automatic anything, but
4  what I am doing is, I'm going to issue a scheduling order
5  today.  And the government proposed, and I'm happy to live with
6  it, that you -- I've already ruled on motion to dismiss
7  standing, blah-blah-blah, so we're now at the point of agency
8  review.  And if the Court denies the pending motion to dismiss,
9  which I did in part and allowed in part -- I went and
10 reviewed -- I couldn't even remember what I did -- so 45 days
11 from now the administrative record should be put together.
12         MS. SAGAR:  Can we be heard on the 45 days, your
13 Honor, just briefly?
14         THE COURT:  Well, what do you want?
15         MS. SAGAR:  Well, so the government actually hasn't
16 produced the administrative record.  I don't know why the
17 administrative record would be different.  They produced it in
18 a different case where a party had moved for a preliminary
19 injunction.  Indeed the record exists.  We think the government
20 should be able to do it faster.
21         Back after the Court had denied the motion for
22 voluntary remand, the government had suggested a schedule in
23 which it would answer the complaint 21 days from that denial.
24 Of course, some of that time has elapsed already, but, you
25 know, we'd be comfortable with the 21-day horizon that the

```
 1   government had already suggested for filing a responsive
 2   pleading.
 3           THE COURT:  So that's a good.  So we need a responsive
 4   pleading.  When can you do that, Mr. Holland?
 5           MR. HOLLAND:  You know, I think maybe about 60 days,
 6   your Honor.  That's the normal responsive pleading deadline in
 7   the Federal Rules of Civil Procedure.
 8           MS. SAGAR:  Your Honor, this has been pending for two
 9   years.  It's also not the normal deadline.  After a motion to
10   dismiss has been denied, the government would have 14 days.  We
11   agreed to an extension for 21 days to file a --
12           MR. HOLLAND:  Your Honor, this case has been stayed
13   for a year.
14           THE COURT:  When can you get it to me, Mr. Holland?
15   Has it already been in draft?
16           MR. HOLLAND:  No.  No, your Honor.  This case has been
17   stayed for a year.  It has not been in draft.  It is a
18   complex -- it's going to require review at the upper levels of
19   HHS and at DOJ, and I respectfully am requesting more than
20   21 days to put the answer together.
21           THE COURT:  Well, what are you asking for?
22           MR. HOLLAND:  I asked for 60 days.  If that's too much
23   time, then, you know -- that is actually, 60 days is the
24   standard time for responding to a complaint in the Federal
25   Rules of Civil Procedure.  This case has been stayed for a
```

1  year.  It's like we're starting new on a brand-new case.
2         THE COURT:  Well, no.  Hold it, hold it.  I ruled on a
3  motion to dismiss.
4         MR. HOLLAND:  That's fair, your Honor.  That is fair.
5         THE COURT:  It's not a brand-new case.  This has been
6  slow-cooking, and faster here than in some courts.
7         So let's just say this:  I will give you 45 days to
8  both respond and produce an administrative record, so 45 days
9  to answer and produce a record because it's already been done
10 apparently.  Your motion for summary judgment comes 90 days
11 after the administrative record is compiled, and then is the
12 government likely to file a cross-motion?
13        MR. HOLLAND:  Yes, your Honor.
14        THE COURT:  Okay.  So 90 days from -- why are we
15 waiting 45 days after plaintiffs filed their motion for summary
16 judgment?  They should probably both come in at the same time.
17 So 90 days after the defendants produce the administrative
18 record, both sides will file cross-motions for summary
19 judgment, and then the oppositions come in in due course within
20 30 days.  I do like replies within 14 days.  I actually like
21 surreplies, because I think it tees up the issue, within
22 14 days.  And then we should know by then -- I mean, really,
23 that's a fairly long time -- whether there's going to be a
24 notice of proposed rulemaking.  I am likely, just so the
25 plaintiffs know this, likely to stay it if they're addressing

```
 1         the issues because there's no need for me to go into a major
 2         constitutional analysis or regulatory analysis if it's the
 3         proposed notice.
 4                   Now, that said, my guess is, given how angry some of
 5         these -- not angry -- fraught some of these issues are -- I
 6         don't know what the right answer is -- that there will be a lot
 7         of comments on them along the way; and what I want to do is be
 8         in a position to deal with any issue that's, for example, not
 9         addressed at all by the rule.  But just fair notice that if
10         something is addressed by the rule, I'm likely to defer.
11                   MS. SAGAR:  Just to clarify, your Honor, by address
12         the rule, you mean address consistent with what plaintiffs say
13         the rule should say consistent with the statute?  Because of
14         course the rule could -- the Trump rule addressed all the
15         issues but addressed it in the wrong way.
16                   THE COURT:  It doesn't have to be exactly what you
17         want, I mean, because that's what the notice and comment would
18         be coming in to talk about.  I mean, it's just like -- I don't
19         know what the right answer is, I forget.  To be honest, I don't
20         remember the issues well enough that are left.  But, you know,
21         you're looking for the sun, the moon, and the stars, and they
22         may only give you the sun and the moon, but that's what notice
23         and comment is all about.  In other words, for example, if
24         there's an issue that doesn't address -- if the rule doesn't
25         address anything having to do with one of the issues raised --
```

1   oh, I don't know, say insurance coverage, for example -- then I
2   would take that up and not wait for notice and comment because
3   there would be no purpose in it.  So I don't even know -- I'm
4   sure Mr. Holland has actually seen the draft.  I don't know if
5   every single issue is addressed or some are deferred for a
6   later date.  I don't know.
7           MR. HOLLAND:  Your Honor, as you know, you know, I
8   cannot opine on the rule publicly, but I will just say that I
9   would not be here asking the Court to do everything it's doing
10  or it has or was doing, you know, if there was any reason to
11  believe that these issues weren't being addressed in the new
12  law.
13          THE COURT:  Well, the only one where I thought there
14  was potential of becoming irreparable harm is the allegation by
15  the plaintiffs that the insurance companies stopped covering,
16  stopped providing certain coverage.  Others were -- I can't
17  remember -- either dealt with through preliminary injunctions,
18  or most of them, some of them I dismissed altogether.  I can't
19  remember the issues well enough, but there was one purely legal
20  issue having to do with the Danforth Amendment.
21          MS. SAGAR:  Yes, your Honor.  I can tell you which
22  claims you permitted to proceed.  Would that be helpful to the
23  Court?
24          THE COURT:  Well, no, because I think at this point
25  what we're going to do is, we're just going to let this go

1  forward, and there's going to be an answer.  And then, ideally
2  speaking, what I'd love to have happen, because I'm so swamped
3  right now -- everything that was supposed to have tried during
4  COVID is trying now, so I'm very busy in court, and likely I
5  won't get to it this summer.  It gives the government plenty of
6  time to hit that four-and-a-half-month benchmark, and hopefully
7  this can go through the normal regulatory proceeding.  But if
8  there's an issue that's not hit at all, I'll deal with it.  And
9  if there's an issue that is dealt with, though perhaps not in
10 the way you want perfectly, I might wait for the rulemaking
11 process.  It's just time.
12         So what's happening with all these other cases?
13         MR. HOLLAND:  Yes, thank you, your Honor.  I'd like to
14 address that.  Every single other case is stayed because the
15 agency is addressing this administratively.  So, for example,
16 in *Whitman-Walker*, which is an EDNY case, the stay had expired
17 just in May, just like your stay.  The court decided that the
18 stay would continue and has required a joint status report
19 letter from the parties on October 21, 2022.
20         *New York v. HHS*, an SDNY case, is stayed until the end
21 of the final rule.  Proposed schedule is due 30 days after the
22 final rule is issued.
23         *Chinatown v. HHS*, which addresses the issue about
24 language access, it has been stayed pending a new NPRM.  We
25 have been filing status report updates at the end of every

1  other month.

2  *Whitman-Walker v. HHS*, which is Judge Boasberg's other
3  case that you have looked to several times in this case, is
4  also stayed pending the outcome of the notice of proposed
5  rulemaking.  The parties have to file joint status reports at
6  the end of every other month.  In the last joint status report
7  just a few days ago, the plaintiffs urged the court, just like
8  these plaintiffs, to please terminate the stay as of July 31,
9  is what they asked the court because they thought -- I mean,
10 these are the plaintiffs who thought it would be reasonable to
11 give OIRA a little bit more time.  The court disagreed with
12 them, did not adopt their suggestion, and required another
13 joint status report, as it has been, for August 1, and that
14 would be the pragmatic thing to do with this law.

15         I just want to stress here that the Obama rule, which
16 was sent to OIRA, the proposed rule was sent to OIRA April 29,
17 2015.  The final rule was then published about a year later,
18 May 13, 2016.  So if you're telling us, your Honor, we won't
19 get to this rule in this -- you know, we're having to do all
20 this busywork when there's every reason to believe, if we're
21 consistent with the Obama rule's time period, that this entire
22 thing, including the final rule, which really isn't the
23 standard here, that we'll be done within a year.

24         I mean, what actually happened here, your Honor, is
25 we -- at the end of an APA case, the default rule is a remand.

1    We already asked for a remand because we want to reconsider and
2    are reconsidering this rule.  The courts have been reluctant to
3    the remand until it saw the proposed rule.  So that's why this
4    plan was stayed before the proposed rule and not the final
5    rule, because a remand would be appropriate if everything is
6    being addressed in the proposed rule.
7              THE COURT:  And if everything has been addressed, I
8    might give you a remand, but right now I said "And this is my
9    last extension."  I said that last time.  And actually it's a
10   month later than I said it was going to be because I was
11   supposed to do it in early May, and I forget -- maybe I was on
12   trial -- why I continued the status.
13             But, in any event, this is what I'm going to do, and
14   then you tell me:  If the office of whatever it's called, OIRA,
15   and you issue the notice of proposed rulemaking and it covers
16   the issues, I'm open to both a stay and a remand.  It's just I
17   can't be sure.  And so that's what I'm doing.
18             So it's an interesting case, and I don't think it's
19   busywork.  You're perhaps feeling frustrated because you've
20   seen the rule, I haven't, so you're not in a position to
21   release it.  But I have no idea what OIRA -- who's the head of
22   it now?
23             MR. HOLLAND:  I'm not sure, your Honor.  I mean, it's
24   the Executive Office of the President.  At some point the buck
25   stops with Mr. Biden.

```
 1              THE COURT:  Well, in fairness, he has a lot of just as
 2     important issues on his plate.  I mean, the war in Ukraine,
 3     he's got a myriad of other issues on his plate, and I get that.
 4     But, ideally speaking, this will help move it along.  The
 5     courts are watching.
 6              So, anyway, I have no desire to do extra work.  As I
 7     just said, I'm utterly swamped.  I'm totally open to a stay or
 8     a remand if in fact this case moves at some sort of speed, but
 9     it's been a year and a half.
10              MR. HOLLAND:  I am also very swamped, your Honor, and
11     I would appreciate it, if the NPRM does come out imminently and
12     we notify you, if we can get an extension on our deadlines
13     because it does seem like busywork to me when this is going to
14     be resolved by the agency.  So I just don't want to be in the
15     position --
16              THE COURT:  Excuse me, excuse me.  You're not being
17     asked to do very much, answer a complaint and put together a
18     record that's already been compiled.  That's not much.  And
19     then it's 90 days after that you're briefing summary judgment.
20     So if the agency doesn't come up with something by then,
21     there's a problem.
22              MR. HOLLAND:  That's fair in a regular case.  I'm not
23     sure if you read the plaintiffs' allegations about why just
24     have a remand when everything else -- it's interesting.
25              THE COURT:  Have I allowed the deposition?  I have not
```

```
 1   allowed the deposition.
 2            MR. HOLLAND:  True, but we have to answer their
 3   complaint's allegations.  But we'll address it, your Honor.
 4            THE COURT:  Mr. Severino must be somewhere around,
 5   right?
 6            MR. HOLLAND:  Not -- I don't know where he is.
 7            THE COURT:  Well, someone must have done some
 8   investigation early on.
 9            MR. HOLLAND:  We will do our best to answer the
10   complaint.
11            THE COURT:  You know what the most common motion in
12   front of me is?
13            MR. HOLLAND:  What is that, your Honor?
14            THE COURT:  Motion for an extension of time.  You know
15   how to do it, okay?
16            MR. HOLLAND:  All right, thank you.
17            THE COURT:  All right, thank you.  Bye-bye.
18            THE CLERK:  Judge, it's Maryellen.  Can counsel just
19   file a joint, so it's on our docket, a joint amended schedule
20   of all the deadlines because we didn't actually set the
21   deadlines.  We just set days.
22            MR. KETTLEWELL:  We'll do that, your Honor, because
23   the government is very swamped, as we understand.
24            THE COURT:  And I forget, Ms. Sagar, where are you
25   right now?
```

```
 1              MS. SAGAR:  Washington, your Honor.
 2              THE COURT:  You're in the law firm?
 3              MS. SAGAR:  Yes, your Honor, Hogan Lovells.
 4              THE COURT:  The reason I say that is, I know there
 5   have been various law students over time, and I just wanted --
 6   this is a compliment.  People used to say this to me, and they
 7   don't say it anymore.  But you look quite young, and I wasn't
 8   sure whether you were a graduate or a recent graduate or
 9   whether you were at the firm.
10              MS. SAGAR:  I'll take it as a compliment, your Honor.
11              THE COURT:  You'll get to the point like me where
12   people long ago stopped asking me that question.  And
13   Mr. Kettlewell is exactly my age, so there we go.
14              Okay, thank you.  Bye-bye.
15              MR. KETTLEWELL:  Bye-bye.
16              THE CLERK:  So, Bill, if you can get that in by
17   June 10, that would be great.
18              MR. KETTLEWELL:  Yes, Maryellen.
19              THE CLERK:  All right, thank you.
20              THE COURT:  Thank you.  Bye.
21              (Adjourned, 9:57 a.m.)
```

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )

     I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 19 inclusive, was recorded by me stenographically at the time and place aforesaid in Civil Action No. 20-11297-PBS, BAGLY v. United States Department of Health and Human Services, et al, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

     Dated this 4th day of June, 2022.


/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER