# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

BAGLY, *et al.*,

                    Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

                    Defendants.

Civil Action No. 20-cv-11297-PBS

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' ASSERTION OF MOOTNESS

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    A.    Congress Enacted Section 1557, Prohibiting Discrimination In Healthcare ........................................................................................................ 2

    B.    The Obama Administration Promulgated The 2016 Rule, Interpreting Section 1557 To Provide Broad Protections Against Healthcare Discrimination, Which Courts Quickly Enjoined In Part ............................ 3

    C.    The Trump Administration Promulgated The Rollback Rule, And Plaintiffs And Other Affected Parties Filed Suit, Resulting In Court Orders Enjoining Parts Of The Regulation .................................................... 4

    D.    The Biden Administration Promulgated The 2024 Rule, And A New Set Of Court Orders Stay Its Effective Date In Whole Or In Part ...................... 6

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ..................................................................................................................... 8

    I.    Defendants Have Failed To Shoulder Their Burden Of Showing That The Case Is Moot Because The 2024 Rule Has Not Yet—And May Never Become—Fully Effective ...................................................................... 8

    II.    Defendants Have Failed To Shoulder Their Burden Of Showing That The Case Is Moot Because Even After The 2024 Rule Takes Effect, The Court Will Still Be Able To Grant Plaintiffs Effective Relief ...................... 10

    III.    Even If The Court Concludes The Case Is Moot, The Court Should Not Dismiss Plaintiffs' Suit Because Exceptions To The Mootness Doctrine Apply Here ........................................................................................................ 12

        A.    Plaintiffs' Claims Are Capable Of Repetition Yet Evading Review ............................................................................................... 12

            1.    Plaintiffs' Injuries Are Likely To Recur ............................... 13

            2.    HHS Changes Interpretations Of Section 1557 Too Frequently To Allow The Statute's Meaning To Be Fully Litigated ...................................................................................... 16

**TABLE OF CONTENTS—Continued**

B.      Plaintiffs' Claims Fall Within The Voluntary Cessation Exception ........................................................................................17

CONCLUSION.............................................................................................................20

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**CASES:**

*ACLU of Mass. v. U.S. Conf. of Cath. Bishops*,
 705 F.3d 44 (1st Cir. 2013)................................................................................................11

*Adarand Constructors v. Slater*,
 528 U.S. 216 (2000).............................................................................................................1

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
 827 F.3d 100 (D.C. Cir. 2016)............................................................................................9

*Alaska v. U.S. Dep't of Agric.*,
 17 F.4th 1224 (D.C. Cir. 2021)...........................................................................................9

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013).............................................................................................................15

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*,
 72 F.4th 284 (D.C. Cir. 2023).............................................................................................9

*Bostock v. Clayton Cnty.*,
 140 S. Ct. 1731 (2020).........................................................................................................5

*Burlington N. RR. Co. v. Surface Transp. Bd.*,
 75 F.3d 685 (D.C. Cir. 1996)............................................................................................17

*Chafin v. Chafin*,
 568 U.S. 165 (2013).............................................................................................................7

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*,
 236 F.3d 1174 (10th Cir. 2000) ........................................................................................16

*Cnty. of Los Angeles v. Davis*,
 440 U.S. 625 (1979).......................................................................................................2, 17

*Connectu LLC v. Zuckerberg*,
 522 F.3d 82 (1st Cir. 2008)...............................................................................................12

*Conservation L. Found. v. Evans*,
 360 F.3d 21 (1st Cir. 2004)...............................................................................................20

*Council for Emp. & Econ. Energy Use v. FCC*,
 575 F.2d 311 (1st Cir. 1978).............................................................................................11

### TABLE OF AUTHORITIES—Continued

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) ...............................................13

*Doe v. Hopkinton Pub. Sch.*,
  19 F.4th 493 (1st Cir. 2021) ...........................................2, 12

*Doe v. Sullivan*,
  938 F.2d 1370 (D.C. Cir. 1991) ..........................................13

*FBI v. Fikre*,
  601 U.S. 234 (2024) ..........................................................14

*Franciscan All., Inc. v. Azar*,
  414 F. Supp. 3d 928 (N.D. Tex. 2019) ..................................17

*Franciscan All. v. Burwell*,
  227 F. Supp. 3d 660 (N.D. Tex. 2016) ...............................3, 13

*Gaspee Project v. Mederos*,
  13 F.4th 79 (1st Cir. 2021) ................................................17

*Gulf of Me. Fishermen's All. v. Daley*,
  292 F.3d 84 (1st Cir. 2002) .............................................9, 16

*Honig v. Doe*,
  484 U.S. 305 (1988) ..........................................................13

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................7

*McCoy-Elkhorn Coal Corp. v. EPA*,
  622 F.2d 260 (6th Cir. 1980) .............................................15

*Miller v. Benson*,
  68 F.3d 163 (7th Cir. 1995) ...............................................16

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*,
  708 F.3d 921 (7th Cir. 2013) .............................................19

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
  587 U.S. 370 (2019) ............................................................8

*Nat. Res. Def. Council v. Wheeler*,
  955 F.3d 68 (D.C. Cir. 2020) .............................................10

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ............................................................9

<u>TABLE OF AUTHORITIES—Continued</u>

*Neese v. Becerra*,
  640 F. Supp. 3d 668 (N.D. Tex. 2022) .................................................................5

*New York v. Raimondo*,
  No. 1:19-cv-09380-MKV, 2021 WL 1339397 (S.D.N.Y. Apr. 9, 2021) ...............16

*Ohio v. EPA*,
  969 F.3d 306 (6th Cir. 2020) ...............................................................................15

*Ralls Corp. v. Comm. on Foreign Inv.*,
  758 F.3d 296 (D.C. Cir. 2014) .............................................................................13

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) .......................................................................19, 20

*Super Tire Eng'g Co. v. McCorkle*,
  416 U.S. 115 (1974)...........................................................................1, 10, 11, 12

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...............................................................................................7

*Tennessee v. Becerra*,
  No. 1:24-cv-00161-LG-BWR, 2024 WL 3283887 (S.D. Miss. July 3, 2024).....7, 8

*Texas v. Becerra*,
  No. 6:24-cv-00211-JDK, 2024 WL 3297147 (E.D. Tex. July 3, 2024) ...........6, 7, 8

*Transwestern Pipeline Co. v. FERC*,
  897 F.2d 570 (D.C. Cir. 1990)..............................................................................11

*United Bhd. of Carpenters & Joiners v. Operative Plasterers & Cement Masons'
  Int'l Ass'n*,
  721 F.3d 678 (D.C. Cir. 2013)..............................................................................17

*United States v. W. T. Grant Co.*,
  345 U.S. 629 (1953).......................................................................................14, 18

*Verizon New England, Inc. v. Int'l Broth. of Elec. Workers, Local No. 2322*,
  651 F.3d 176 (1st Cir. 2011) ................................................................................11

*Walker v. Azar*,
  480 F. Supp. 3d 417 (E.D.N.Y. 2020) ....................................................................4

*Walker v. Azar*,
  No. 20-CV-2834, 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020).............................5

*Whitman-Walker Clinic, Inc. v. HHS*,
  485 F. Supp. 3d 1 (D.D.C. 2020) ...........................................................................4

<u>TABLE OF AUTHORITIES—Continued</u>

**STATUTES:**

5 U.S.C. § 706(2) ......................................................................................................................10

5 U.S.C. § 706(a) ......................................................................................................................11

20 U.S.C. § 1681(a) ....................................................................................................................2

20 U.S.C. § 1684 .........................................................................................................................2

28 U.S.C. § 2201(a) ..................................................................................................................11

29 U.S.C. § 794(a) ......................................................................................................................2

42 U.S.C. § 2000d .......................................................................................................................2

42 U.S.C. § 6101 .........................................................................................................................2

42 U.S.C. § 18116(a) ..................................................................................................................2

42 U.S.C. § 18116(c) ................................................................................................................13

**REGULATIONS:**

45 C.F.R. § 92.2(a) (2017) ..........................................................................................................3

45 C.F.R. § 92.4 ..........................................................................................................................3

45 C.F.R. § 92.206 ......................................................................................................................5

45 C.F.R. § 92.207(b)(4) .............................................................................................................3

*Nondiscrimination in Health and Heath Education Programs or Activities*, 84
    Fed. Reg. 27,846 (June 14, 2019) ........................................................................................4

*Nondiscrimination in Health and Heath Education Programs or Activities,
    Delegation of Authority*, 85 Fed. Reg. 37,160 (June 19, 2020) ..........................................4

*Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37,522 (May
    6, 2024) ..............................................................................................................................6, 8

**OTHER AUTHORITY:**

*Mandate for Leadership: The Conservative Promise*, Project 2025 Presidential
    Transition Project (2023),
    https://static.project2025.org/2025_MandateForLeadership_FULL.pdf ...............................14

## INTRODUCTION

This case is very much alive.  To dislodge the presumption that this Court has subject-matter jurisdiction over the case, Defendants—as the party suggesting mootness—bear the "heavy burden" of establishing that this Court cannot meaningfully review Plaintiffs' challenge to the Rollback Rule.  *Adarand Constructors v. Slater*, 528 U.S. 216, 222 (2000) (per curiam) (quotation marks and citation omitted).  Instead of shouldering that burden, Defendants offer the Court just four pages of conclusory assertions.

Three key facts are missing from Defendants' brief:  First, the Rollback Rule largely remains in effect today.  It has not been superseded by a new rule, as Defendants claim.  *Three* different injunctions have issued blocking the Rule in full or in part.  As long as the Rule remains in effect, it continues to harm Plaintiffs because it abandons critical anti-discrimination protections in health care for LGBTQI+ persons, women, and pregnant people—protections that Congress legislated to safeguard under Section 1557 of the Affordable Care Act (ACA).

Second, Defendants misrepresent the scope of Plaintiffs' complaint.  In addition to the vacatur of the Rollback Rule, Plaintiffs seek declaratory relief:  A court order that the Rollback Rule's provisions are inconsistent with—and foreclosed by—the plain text of Section 1557.  This Court can still order that relief.  *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974).

Third, Defendants also fail to account for the regulatory and procedural history of this case.  The Department of Health and Human Services (HHS) has seesawed between interpretations of Section 1557, changing its policy with every change in Presidential administration.  And with every change of HHS's interpretation, courts have enjoined the latest iteration of the regulation.  HHS's inability to issue a durable interpretation has left regulated parties unsure of their rights and obligations, notwithstanding the statute's clear commands.  Thus, even if the Court concludes that Plaintiffs' claims are nominally moot, the exceptions to the mootness doctrine apply.  The issues

presented are capable of repetition yet evading review, *Doe v. Hopkinton Pub. Sch.*, 19 F.4th 493, 511 (1st Cir. 2021), and the government's voluntary cessation of the challenged conduct does not deprive the court of jurisdiction, *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

In sum, the challenged regulation remains on the books, Plaintiffs continue to be harmed by it, and a favorable judgment will redress Plaintiffs' injuries.  This case is not moot.

**BACKGROUND**

**A.      Congress Enacted Section 1557, Prohibiting Discrimination In Healthcare.**

The ACA, adopted by Congress in 2010, contains a non-discrimination provision ("Section 1557").  ECF No. 18, ¶¶ 86, 92–93.  Under this provision, "an individual shall not, on the ground prohibited under" four cross-referenced statutes "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, . . . or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of the ACA or amendments made by Title I]."  42 U.S.C. § 18116(a).  The prohibited grounds are "race, color, or national origin," *id.* § 2000d, "sex," 20 U.S.C. §§ 1681(a), 1684, "age," 42 U.S.C. § 6101, and "disability," 29 U.S.C. § 794(a).  Section 1557 also incorporates the "enforcement mechanisms provided for and available under" those statutes.  42 U.S.C. § 18116(a).

Section 1557 helped stem, but did not stop, some of the routine discrimination by healthcare providers and insurers against LGBTQ+ (lesbian, gay, bisexual, transgender, queer, intersex, or non-binary) people, women, people seeking pregnancy-related and reproductive care, and people seeking gender affirming care, among other historically marginalized communities of healthcare consumers.  ECF No. 18, ¶¶ 88–91, 100–116.

**B.      The Obama Administration Promulgated The 2016 Rule, Interpreting Section 1557 To Provide Broad Protections Against Healthcare Discrimination, Which Courts Quickly Enjoined In Part.**

As a further effort to end this discrimination, HHS issued the 2016 Rule.  The 2016 Rule clarified who was subject to Section 1557's requirements and exactly what was prohibited.  As relevant here, it stated that Section 1557 applies to "every health program or activity" that receives funding through HHS, that is administered by HHS, or that is administered by a Title I entity.  45 C.F.R. § 92.2(a) (2017).  It defined "covered entity" to include all entities operating health programs or activities subject to Section 1557.  *Id.* § 92.4.  It defined discrimination on the basis of sex to include "pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions, sex stereotyping, and gender identity."  *Id.*  The 2016 Rule also explicitly prohibited covered insurers from implementing "a categorical coverage exclusion or limitation for all health services related to gender transition," *id.* § 92.207(b)(4), and required healthcare providers to "treat individuals consistent with their gender identity," 85 Fed. Reg. 37,247.

One month after the regulation took partial effect, a group of states and religiously affiliated healthcare providers sued.[1]  Before the year was out, one of those courts had entered a nationwide preliminary injunction.  *See Franciscan All. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016). The court's order barred HHS enforcement of the 2016 Rule insofar as it prohibited discrimination based on "gender identity" and "termination of pregnancy."  *Id.*

---

[1] *See* Compl., *Franciscan All.*, No. 7:16-cv-00108 (N.D. Tex. Aug. 23, 2016), ECF No. 1.  Similar plaintiffs sued in the District of North Dakota not long after.  *See* Compl., *Religious Sisters of Mercy v. Burwell*, No. 3:16-cv-00386 (D.N.D. Nov. 7, 2016), ECF No. 1; Compl., *Cath. Benefits Assoc. v. Burwell*, No. 3:16-cr-00432 (D.N.D. Dec. 28, 2016), ECF No. 1.

C.      **The Trump Administration Promulgated The Rollback Rule, And Plaintiffs And Other Affected Parties Filed Suit, Resulting In Court Orders Enjoining Parts Of The Regulation.**

A few years later, HHS proposed eliminating most of the 2016 Rule, ostensibly based on the *Franciscan Alliance* decision. *See Nondiscrimination in Health and Heath Education Programs or Activities*, 84 Fed. Reg. 27,846 (June 14, 2019). This prompted thousands of comments warning the proposed rule would lead to increased discrimination in healthcare, adverse health outcomes, and greater overall healthcare costs. 85 Fed. Reg. at 37,165; ECF No. 18 ¶ 166.

Nevertheless, HHS published the final Rollback Rule in June 2020. 85 Fed. Reg. 37,160. The Rollback Rule signaled a sea change in HHS's interpretation and enforcement of Section 1557. It narrows the scope of covered entities. 85 Fed. Reg. 37,160 at 37,244–37,245. It deletes the definition of "on the basis of sex," *id.* at 37,245, deletes the prohibition of categorical coverage exclusions for transgender-related care, *id.* at 37,247, and deletes the requirement that covered entities "treat individuals consistent with their gender identity," *id*. It also adds sweeping religion and abortion exemptions. *Id.* at 37,243.

Shortly after the Rollback Rule was finalized, affected parties filed suit.[2] In two of those cases, the courts entered partially overlapping preliminary injunctions.[3] These orders reinstated the 2016 Rule's definition of "on the basis of sex," "gender identity," and "sex stereotyping." *See Walker*, 480 F. Supp. 3d 417, 430; *Whitman-Walker Clinic*, 485 F. Supp. 3d at 41–42. The *Whitman-Walker* Court further enjoined the incorporation of Title IX's religious exemption.

---

[2] *See* Compl., *Whitman-Walker Clinic, Inc. v. HHS*, No. 1:20-cv-01630, 2020 WL 3444030 (D.D.C. June 22, 2020), ECF No. 1; Compl., *Walker v. Azar*, No. 1:20-cv-02834 (E.D.N.Y. June 26, 2020), ECF No. 1; Compl., *Washington v. HHS*, No. 2:20-cv-01105, 2020 WL 4050303 (W.D. Wash. July 16, 2020), ECF No. 1; Compl., *New York v. HHS*, No. 1:20-cv-05583, 2020 WL 4059929 (S.D.N.Y. July 20, 2020), ECF No. 1.

[3] *Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64–65 (D.D.C. 2020).

*Whitman-Walker Clinic*, 485 F. Supp. 3d at 45–46.  And the *Walker* court later also enjoined the repeal of the former 45 C.F.R. § 92.206, which prohibits discrimination based on gender identity. *See Walker v. Azar*, No. 20-CV-2834, 2020 WL 6363970, at *4 (E.D.N.Y. Oct. 29, 2020).

Plaintiffs brought similar claims challenging the Rollback Rule. *See* ECF No. 1 (July 9, 2020).  Defendants moved to dismiss the complaint.  ECF No. 21 (Oct. 14, 2020).  This Court largely denied that motion.  ECF No. 63 (Aug. 18, 2021).  As relevant here, the Court found that Plaintiffs had standing to challenge three provisions of the Rollback Rule: (1) the incorporation of Title IX's exemption for the provision and coverage of abortion, *id.* at 21, (2) the narrowed scope of covered entities, *id.* at 24; and (3) the elimination of the 2016 Rule's prohibition on categorical coverage exclusions for gender transition care, *id.* at 28.[4]

In May 2021, HHS issued an enforcement notification explaining the agency's interpretation of gender identity and gender-affirming care under Section 1557 in the wake of *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  A set of plaintiffs promptly challenged the guidance in Texas, where a district court issued a declaratory judgment and certified a class of healthcare providers, holding that Title IX's, and thus Section 1557's, prohibition on sex discrimination does not extend to sexual orientation or gender identity discrimination.  *Neese v. Becerra*, 640 F. Supp. 3d 668, 673, 685–87 (N.D. Tex. 2022).  The Government's appeal of that decision remains pending.  *See Neese v. Becerra*, No. 23-10078 (5th Cir.).

---

[4] The Court found that Plaintiffs lacked standing to challenge four provisions of the Rollback Rule: (1) changes to the 2016 Rule's enforcement scheme; (2) deletion of the prohibition on association discrimination; (3) deletion of the 2016 Rule's notice and taglines requirement; and (4) deletion of conforming amendments in regulations that implement other statutes. *Id.* at 28–35.  In addition, consistent with its decision not to address portions of the Rollback Rule other courts had already enjoined, the Court did not make findings on Plaintiffs' challenges to the Rollback Rule's (1) incorporation of Title IX's religious exemption, (2) deletion of the expansive definition of "on the basis of sex," and (3) deletion of the requirement that providers treat individuals consistent with their gender identity. *Id.* at 10.

**D.     The Biden Administration Promulgated The 2024 Rule, And A New Set Of Court Orders Stay Its Effective Date In Whole Or In Part.**

On July 25, 2022, Defendants issued a notice of proposed rulemaking regarding Section 1557.  ECF No. 104-1 (July 25, 2022).  In this case, the Parties jointly moved to stay all proceedings until Defendants published a new final rule implementing Section 1557.  ECF No. 111. Plaintiffs had previously opposed efforts by DOJ to stay this case or remand to the agency, ECF No. 72, and had asked this Court to lift the stay it entered after Defendants still had not published a proposed rule by their promised date of April 2022, ECF No. 89.  After Defendants issued the proposed rule in July 2022, Plaintiffs' consent to stay this matter was secured under the expectation that Defendants would swiftly issue a final rule.  ECF No. 111.  With no rule by December 2023, the Court lifted the stay; with no final rule three months later, Plaintiffs moved for partial summary judgment on March 19, 2024.  ECF No. 141.  That motion remains pending.

On May 6, 2024, HHS published the new final rule in the Federal Register.  ECF No. 150-1; 89 Fed. Reg. 37,522.  The rule clarified that "discrimination on the basis of sex" under Section 1557 "includes, but is not limited to, discrimination on the basis of . . . (i) Sex characteristics, including intersex traits; (ii) Pregnancy or related conditions; (iii) Sexual orientation; (iv) Gender identity; and (v) Sex stereotypes."  *Id.* at 37,699.  The rule applies to any "covered entity" that receives federal funds.  *Id.* at 37,522–23.

That rule was set to take effect on July 5, 2024.  *Id.*  Before it did, however, several federal courts issued orders in cases challenging the 2024 rulemaking.  HHS is prohibited from enforcing all or portions of the 2024 rulemaking by three separate injunctions, one nationwide in scope and two others covering Texas, Florida, and Montana.  Mem. Op. & Order, *Tennessee v. Becerra*, No. 1:24-cv-00161-LG-BWR, 2024 WL 3283887 (S.D. Miss. July 3, 2024), ECF No. 29; Order, *Florida v. HHS*, No. 8:24-cv-01080-WFJ-TGW (M.D. Fla. July 3, 2024), ECF No. 41; Mem. Op.

& Order, *Texas v. Becerra*, No. 6:24-cv-00211-JDK, 2024 WL 3297147 (E.D. Tex. July 3, 2024), ECF No. 18.  The *Tennessee v. Becerra* decision orders HHS to "maintain[] the status quo" through "a nationwide preliminary injunction" prohibiting Defendants from enforcing "the May 2024 Rule's provisions concerning gender identity;" and stays the July 5, 2024 effective date of the 2024 Rule nationwide "in so far as this final rule is intended to extend discrimination on the basis of sex to include discrimination on the basis of gender identity" in multiple provisions.   2024 WL 3283887, at *13–14.  The *Florida v. HHS* ruling—which "runs throughout the State of Florida"— likewise stays the effective date of the 2024 rulemaking and preliminarily enjoins enforcement to the extent the 2024 rule is "based on the interpretation of discrimination 'on the basis of sex'" to include gender identity.  Order at 49, *Florida v. HHS*, No. 8:24-cv-01080-WFJ-TGW (M.D. Fla. July 3, 2024), ECF No. 41.  Finally, the *Texas v. Becerra* injunction stays "the effective date of all portions of the May 6, 2024 Final Rule" "as to Texas and Montana and all covered entities in those States."  2024 WL 3297147, at *12.

## **LEGAL STANDARD**

A federal court has a "virtually unflagging" responsibility "to hear and decide cases within its jurisdiction."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (internal quotation marks and citations omitted); *see also Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014) (same).  For this reason, courts do not lightly dismiss cases as moot.  A case becomes moot only if, assuming the plaintiff prevails, "it is impossible for a court to grant [her] any effectual relief whatever."  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).  The court must assume the plaintiff will "prevail" unless her argument that relief is legally available and that she is entitled to it is "so implausible that it is insufficient to preserve jurisdiction."  *Id.* at 174.  If there is "any

chance" that relief will be effective in securing what she seeks, she has an interest in obtaining it.

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019).

## ARGUMENT

### I.    Defendants Have Failed To Shoulder Their Burden Of Showing That The Case Is Moot Because The 2024 Rule Has Not Yet—And May Never Become—Fully Effective.

Defendants argue that that "[t]he Court should dismiss this action as moot because the 2020 Rule that Plaintiffs challenge has been replaced." Govt. Br. 2. But that replacement has largely been put on ice. Although it was slated to take effect on July 5, 2024, multiple federal courts have since enjoined and delayed the effective date of all or part of the 2024 Rule. The result is that key portions of the Rollback Rule remain operative nationwide, and the Rollback Rule remains fully operative in Texas and Montana. *See supra* at 7. Those decisions order HHS to "maintain[] the status quo." *Tennessee v. Becerra*, 2024 WL 3297147, at *11. As explained by the 2024 Rule itself: "The 2020 Rule remains in effect, save for the parts enjoined or set aside by courts, until the effective date of this final rule." *Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37,522, 37,523 (May 6, 2024). And, "[i]n the meantime, entities that are subject to the 2020 Rule *must continue to comply with* the parts of *the 2020 Rule* that remain in effect." *Id.* (emphasis added). The District Court orders enjoining the 2024 Rule confirm that the Rollback Rule remains the governing legal framework. The *Tennessee v. Becerra* court observed that "[a] stay of the effective date of the May 2024 Rule will not harm either HHS or the public interest because *it will merely preserve the status quo*"—that is, the Rollback Rule and its policies that continue to harm Plaintiffs. 2024 WL 3283887, at *12 (emphasis added).

Because the Rollback Rule will remain in force until a new rule fully replaces it, and because the effective date of the new rule has been stayed in full in two states and in significant part nationwide, the Plaintiffs can currently receive effectual relief on all of their claims. This

8

conclusion flows directly from Supreme Court precedent, which holds that new agency action cannot moot a preexisting challenge to a rule where the challenged rule "remains on the books." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018). In a case closely paralleling the circumstances here, the Supreme Court granted review on an issue regarding judicial review of a rule issued jointly by two federal agencies. Even though the agencies had already proposed to repeal and replace the preexisting rule, and it seemed possible that a new rule would be finalized while the parties waited for the Supreme Court's decision, the Court rejected the government's mootness objections and denied the government's motion to stay the litigation. Because the challenged rule "remains on the books for now, the parties retain 'a concrete interest' in the outcome of this litigation." *Id.* (citations omitted).

Although Defendants assert that "the First Circuit and other circuits have confirmed that an agency's amendment or repeal of a challenged regulation renders a lawsuit challenging the original regulation moot," Govt. Br. 2, none of the cases that the Defendants cite in support of that statement involved regulations that had not yet taken effect and may never take effect. *See Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1226 (D.C. Cir. 2021) ("Alaska's appellate brief focused entirely on the Roadless Rule's impact on the Tongass National Forest. But *the Rule no longer applies* to the Tongass.") (emphasis added); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) ("[O]nce the Department of Interior *rescinded the Alaska exception*, this case became moot.") (emphasis added); *Gulf of Me. Fishermen's All. v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002) ("Here, the appellant asks us to invalidate Framework 25, a regulation *which is no longer in effect* because it has been replaced by a series of subsequent Frameworks.") (emphasis added). The analysis is demonstrably different where the regulation lacks the force of law. *See, e.g.*, *Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 295 (D.C. Cir. 2023) ("This proposed

rule does not change our analysis" because "it is not final and thus currently lacks the force of law."). Unlike each of these examples, the Rollback Rule largely remains in effect, retains the force of law, and thus remains subject to challenge.

Plaintiffs continue to be injured absent the relief sought—relief from the confusion wrought and harms occasioned by the Rollback Rule. *See* ECF No. 141 at 21–25. This Court may still provide that relief. The same default rules that led the *Tennessee v. Becerra* court to conclude the Rollback Rule remains in effect while the 2024 Rule is preliminarily enjoined would—if this Court grants Plaintiffs' pending motion for partial summary judgment—ensure that the 2016 Rule (which properly interprets the statute) governs regulated parties while the validity of the 2024 Rule is litigated in other forums. *See, e.g.*, *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 77 (D.C. Cir. 2020) ("[O]f course, a vacatur of the 2018 Rule would redress that injury by restoring the 2015 Rule's" provisions.). Plaintiffs have an acute interest in the outcome of this litigation: By obtaining relief, a favorable decision would restore the anti-discrimination protections secured under Section 1557 in place of the unlawful interpretations set forth in the Rollback Rule.

## II. Defendants Have Failed To Shoulder Their Burden Of Showing That The Case Is Moot Because Even After The 2024 Rule Takes Effect, The Court Will Still Be Able To Grant Plaintiffs Effective Relief.

Defendants claim that the case is moot because "the 2024 Rule revises 45 C.F.R. pt. 92 in its entirety." Govt. Br. 1. But, even putting aside whether those revisions are currently in effect, Plaintiffs' complaint didn't ask only for vacatur of those provisions in the Rollback Rule. Plaintiffs also sought declaratory relief: A court order declaring that the Rollback Rule's provisions are inconsistent with—and foreclosed by—the plain text of Section 1557.

Even where injunctive relief may not be available, courts must "decide the appropriateness and the merits of the declaratory request . . . ." *Super Tire Eng'g Co.*, 416 U.S. at 121 (quoting *Zwickler v. Koota*, 389 U.S. 241, 254 (1967)); *see* 5 U.S.C. § 706(2). That is especially true where

governmental action or policy is at issue. *Super Tire Eng'g Co.*, 416 U.S. at 122; *see also Council for Emp. & Econ. Energy Use v. FCC*, 575 F.2d 311, 314 (1st Cir. 1978). Declaratory relief is available and can withstand a mootness challenge if "there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53–54 (1st Cir. 2013) (citation omitted). In other words, if relief will "presently affect the parties' rights" or "have a more-than-speculative chance of affecting them in the future," it is available. *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).

In *Super Tire*, for example, employers challenged New Jersey's policy of awarding public assistance to their striking employees through a state welfare program. 416 U.S. at 116–17. When the strike ended with a new collective bargaining agreement, the Court ruled that the case was not moot for purposes of declaratory relief because "the challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Id.* at 122; *see also, e.g.*, *Verizon New England, Inc. v. Int'l Broth. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 187 (1st Cir. 2011) (although cessation defeated injunctive relief, declaratory relief remained available).

*Super Tire*'s rationale applies here. Plaintiffs challenge government decisions that affect the behavior of third parties. And Plaintiffs have sought declaratory relief, asking this Court to "[d]eclare that the Rollback Rule is unauthorized by, and contrary to, the Constitution and laws of the United States in a declaratory judgment under 28 U.S.C. § 2201(a) and 5 U.S.C. § 706(a)." ECF No. 18 at 106. HHS, as evidenced by the agency's prior practice when engaging in Section 1557 rulemaking, factors such declaratory judgments into its regulatory calculus. *See* 89 Fed. Reg.

at 37,574 n.118 (citing the declaratory judgment entered in *Neese*, 640 F. Supp. 3d 668).  The declaratory relief that Plaintiffs seek would therefore be meaningful even in the absence of injunctive relief because it would both define the parties' rights and obligations under Section 1557 and potentially shape future rulemakings.  *C.f., e.g.*, *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 88–89 (1st Cir. 2008) (mootness avoided by collateral consequences of dismissal on mootness grounds, including the prospect that a judgment will affect future litigation).  In short, declaratory relief would settle a disputed legal issue that affects the parties' rights—whether the Court finds that Section 1557's nondiscrimination provisions are best interpreted the way Plaintiffs understand them or not.  *See Super Tire*, 416 U.S. at 121.

III.   **Even If The Court Concludes The Case Is Moot, The Court Should Not Dismiss Plaintiffs' Suit Because Exceptions To The Mootness Doctrine Apply Here.**

Setting aside that the 2024 Rule has not taken full effect and that the relief Plaintiffs seek includes a request for declaratory judgment, dismissal is not warranted.  The history of HHS's attempts to interpret Section 1557 is a story of regulatory whipsaw.  The agency keeps changing its mind, swinging between wildly different interpretations of the statutory text.  And the courts keep enjoining its efforts in preliminary decisions.  It is time to set firm guardrails as to the proper interpretation of Section 1557.

A.   **Plaintiffs' Claims Are Capable Of Repetition Yet Evading Review.**

This case should not be dismissed as moot because the issues presented are capable of repetition yet evading review.  For this exception to apply, the party contesting mootness must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again."  *Hopkinton Pub. Sch.*, 19 F.4th at 511 (alteration in original and citation and emphasis omitted).  Both requirements are met.

1.      *Plaintiffs' Injuries Are Likely To Recur.*

There is good reason to believe HHS will reverse position again, leading to the same injuries to Plaintiffs. *Id.* at 511 (citation omitted) (to take advantage of the "capable of repetition, yet evading review" exception, the plaintiff must show that she "w[ill] be subjected to the same action again"). To determine whether there is a reasonable expectation of conduct repeating, courts look to "how often [the conduct] has occurred in the past." *Doe v. Sullivan*, 938 F.2d 1370, 1376–86 (D.C. Cir. 1991) (R.B. Ginsburg, J., dissenting). This standard can be met even where "recurrence is far from certain," *Ralls Corp. v. Comm. on Foreign Inv.*, 758 F.3d 296, 324 (D.C. Cir. 2014), or where the same set of facts is not repeatable but the "same legal wrong" is reasonably likely to recur. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 325 (D.C. Cir. 2009). The core decision is "whether the controversy was *capable* of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (emphasis in original).

For three reasons, Plaintiffs can show that their injuries are capable of recurring. *First*, the regulatory history shows that HHS is likely to revert to the Rollback Rule's positions. In 2016, HHS first exercised its authority under Section 1557 to "promulgate regulations to implement this section." 42 U.S.C. § 18116(c). The rule's prohibition of discrimination on the basis of "gender identity" and "termination of pregnancy" were quickly enjoined. *See Franciscan All.*, 227 F. Supp. 3d at 687. In 2020, helmed by new leadership, HHS promulgated the Rollback Rule. That rule, too, was challenged—through this litigation and elsewhere. *See supra* at 4–5. In 2024, with the agency again under new leadership, HHS attempted to promulgate another new rule implementing Section 1557's nondiscrimination mandate. That 2024 rulemaking has never taken full effect. *See supra* at 6–7. This regulatory history is so unusual that one of the orders enjoining the 2024

rulemaking also remarked on the degree to which the Section 1557 rulemaking has been subject to frequent and dramatic administrative changes.[5]

*Second*, and relatedly, in a few short months, depending on the outcome of the Presidential election, the same agency leadership that issued the Rollback Rule may well take the reins at HHS again, and that same leadership has committed to reinstating the Rollback Rule.  The 2025 Presidential Transition Project, in its published policy plan for the first 180 days of the next Trump administration, explicitly names reinstating the Rollback Rule as a policy priority.  Known as Project 2025, the portion of the plan tailored to future HHS actions is authored by one of the architects of the Rollback Rule, former HHS Office for Civil Rights (OCR) Director Roger Severino.  *See* ECF No. 141 at 58-59.  The plan states that HHS should restore the Trump administration's Section 1557 policy, which "specified that the regulation must comply with the religious exemption and abortion neutrality clauses in Title IX from which it is derived as well as the Religious Freedom Restoration Act and other laws" and that "[OCR should issue] a proposed rule to restore the Trump regulations under Section 1557, explicitly interpreting the law not to include sexual orientation and gender identity discrimination."[6]

*Third*, even if Defendants' attempt to promulgate the 2024 Rule amounts to "protestations of repentance and reform," *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953), "[w]hat matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct."  *FBI v. Fikre*, 601 U.S. 234, 244 (2024).  That repudiation does not get HHS very far:  The rule has already been enjoined thrice over, and Defendants are likely to simply "pick

---

[5] *See* Order at 33, *Florida v. HHS*, No. 8:24-cv-01080-WFJ-TGW (M.D. Fla. July 3, 2024), ECF No. 41 (describing the Section 1557 regulatory landscape as "ever-changing and unstable, buffeted by the prevailing political winds"); *id.* at 34 (recounting the "stop/start timeline" and observing "the instability shows little harm to HHS in keeping a steady hand").

[6] *See Mandate for Leadership: The Conservative Promise*, Project 2025 Presidential Transition Project 449 (2023), https://static.project2025.org/2025_MandateForLeadership_FULL.pdf; *see also id.* at 495–96.

up where [they] left off" and fully reinstitute the Rollback Rule in 2025, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Courts have relied on similar evidence to apply exceptions to the mootness doctrine in like settings where executive agencies have oscillated from one position to another.  For example, in *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020), Ohio and Tennessee challenged a rule that "the EPA and the Army Corps of Engineers . . . ha[d] since repealed . . . and more recently ha[d] replaced," but the Sixth Circuit went on to direct the district court to consider the repealed rule's merits.  *Id.* at 307.  The court explained that, due to challenges to the new rule, there was a "fair prospect" that the challenged conduct would recur: "given the recent proliferation of nationwide injunctions and the pendency of 15 cases challenging the Repeal or Protection Rules, we cannot exclude the possibility that, as those cases move forward—and by the orders of two judges or even one—the 2015 Rule might again take effect nationwide."  *Id.* at 310.  The Sixth Circuit refused to set aside common sense, recognizing that the possible vacatur of the new rule "is presumably why the plaintiffs in many of those cases are litigating them; and that eventuality would violate what the States say are their rights under the law."  *Id.*  The Sixth Circuit therefore concluded that "[t]his case as a whole, therefore, remains a live one."  *Id.*; *see also, e.g.*, *McCoy-Elkhorn Coal Corp. v. EPA*, 622 F.2d 260, 265 (6th Cir. 1980) (acknowledging that even "[t]hough the reproposed determination favors appellants, we note that the EPA changed its position in the past.").

This case is in the same posture.  To say that there is a "fair prospect" the challenged conduct will recur is akin to saying there is a fair prospect for precipitation during a rainstorm:  Plaintiffs have been harmed by HHS's regulatory policies, and they will be harmed by them again—even if there is a lapse in the deluge if the 2024 rulemaking takes full effect.

Defendants cite a handful of cases suggesting that this Court cannot consider other litigation in assessing the mootness of this case. *See* Govt. Br. at 4. But Defendants overread those cases. In *New York v. Raimondo*, the plaintiffs challenged two rules the agency subsequently revised. Arguing against mootness, the plaintiffs asserted that other litigation against the agency's newly fashioned rules signaled a "possibility that the challenged rules could become operative again"—but the Court found "the mere filing of a lawsuit" was not enough to "keep the controversy . . . alive." No. 1:19-cv-09380-MKV, 2021 WL 1339397, at *2 (S.D.N.Y. Apr. 9, 2021) (internal quotation marks and citation omitted). A similar pattern unfolded in *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174 (10th Cir. 2000), where there was a state-law challenge to a statute that replaced the one the federal challengers had been litigating against. *Id.* at 1184. Here again, the superseding statute was in full bloom, without any order enjoining its enforcement or effective date. *Id.* Similarly, in *Miller v. Benson*, 68 F.3d 163 (7th Cir. 1995), the most the challengers could say is that they harbored "*concern* that new litigation . . . *may* lead to a decision restoring the original statutory scheme."). *Id.* at 164 (emphases added). Plaintiffs here, by contrast, need not deal in hypotheticals: The 2024 rulemaking on which Defendants rest their mootness argument has been enjoined thrice over.

> ### 2. HHS Changes Interpretations Of Section 1557 Too Frequently To Allow The Statute's Meaning To Be Fully Litigated.

Plaintiffs' claims also meet the remaining requirement for application of the mootness exception that applies to conduct that is capable of repetition, yet evading review. With respect to that requirement—that the challenged action is too short to be fully litigated—the First Circuit has looked to history, as well as the "actual, as opposed to theoretical" timeline on which cases are litigated—to inform the assessment. *Gulf of Me. Fisherman's All.*, 292 F.3d at 89. The real-world difficulty of swiftly litigating complex, record-intensive, APA cases like this one is all too familiar

to this Court:  It took Defendants nearly three years after the Court ruled on the motion to dismiss to issue the 2024 final rule—and HHS issued its rule less than 9 months before the possible advent of a new administration that will almost certainly rescind it—to say nothing of the injunctions that partially blocked its implementation in the first place.

These practical barriers to obtaining relief explain why some courts hold that rules less than two years in duration are too short to be fully litigated.  *See, e.g.*, *Burlington N. RR. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996) ("[B]oth Supreme Court and circuit precedent hold that orders of less than two years' duration ordinarily evade review."); *United Bhd. of Carpenters & Joiners v. Operative Plasterers & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 688 (D.C. Cir. 2013) (same).  Here, the Rollback Rule was in place for less than two years before HHS proposed a new rule.  And the 2016 Rule was only in effect for a matter of months before the Presidential administration changed and the new administration ceased substantively defending the 2016 Rule in Court.  *See Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 941 (N.D. Tex. 2019) (noting HHS "concede[d]" Plaintiffs' entitlement to vacatur of portions of the 2016 Rule).  HHS's attempts to interpret Section 1557's nondiscrimination mandate therefore continually evade meaningful judicial review.  The mootness doctrine does not apply here.  *See Gaspee Project v. Mederos*, 13 F.4th 79, 84 (1st Cir. 2021) ("[T]he Act is still on the books, and the appellants assert—without contradiction—that they plan to engage in similar advocacy during future election cycles.").

### B.        Plaintiffs' Claims Fall Within The Voluntary Cessation Exception.

A second exception to mootness doctrine applies here: the voluntary cessation exception. Voluntary cessation will moot a case only if "there is no reasonable expectation . . . that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Davis*, 440 U.S. at 631 (citation omitted).  There is good reason

to believe that the harm will recur. *See supra* at 13–16. And Defendants here cannot carry their "heavy" burden of showing "that there is no reasonable expectation that the wrong will be repeated," *W. T. Grant Co.*, 345 U.S. at 633 (quotation marks and citation omitted), because the 2024 Rule has not completely and irrevocably eradicated the effects of the Rollback Rule. Not only is the Rollback Rule largely operative nationwide and fully operative in two states due to the cross-cutting injunctions and stays discussed *supra* at 6–7, the Rollback Rule embodies a uniquely damaging set of policies with harmful effects that are still reverberating throughout the American health care system. *See, e.g.*, Hoang Decl. ¶ 22, ECF No. 141-1; McGovern Decl. ¶¶ 15, 19, ECF No. 141-2; *see generally* Riener Decl., ECF No. 141-3. To name just a few:

*First*, the Rollback Rule emboldened sex discrimination to take root as insurance companies and healthcare providers began denying coverage or treatment on the basis of sex, including gender identity, sexual orientation, pregnancy, termination of pregnancy, and sex stereotypes. The Rollback Rule has palpable effects: For example, it generates more frequent insurance denials related to un- and under-treated conditions in patients, and healthcare providers must devote more time and resources to respond to these more frequent insurance denials. McGovern Decl. ¶¶ 30-31, ECF No. 141-2; *see also* Riener Decl. ¶¶ 16, 18–19, ECF No. 141-3. Even more troubling are the instances where LGBTQI+ persons and pregnant persons are denied care, including emergency care, as a result of the Rollback Rule's policies. Hoang Decl. ¶ 12, ECF No. 141-1; Lorenzo Decl. ¶¶ 2, 9-11, ECF No. 141-67.

*Second*, the Rollback Rule works specific negative effects on the transgender community that have yet to be resolved. One survey reports that 25% of transgender individuals experienced problems with medical insurance, including not receiving coverage for gender-affirming care. *See* Sagar Decl. ¶ 3(d) at 5, ECF No. 141-4 (citation omitted). In states especially hostile to protecting

18

transgender health care, individuals risk not receiving treatment in emergency situations—made especially dangerous if an individual is attempting to procure life-saving abortion care.[7]

*Third*, the Rollback Rule causes specific harm for people who are, have been, or may become pregnant. Discrimination concerns surrounding abortion care and miscarriage management have ratcheted up patients' well-founded fears that they will be met with skepticism, resistance, or even refusal when they seek to obtain care. Those policies also have caused patients hesitancy to seek care in the first place. *See* Lorenzo Decl. ¶¶ 13, 15, ECF No. 141-67. This fear is heightened in communities who often receive substandard or culturally insensitive obstetric and gynecological care, including Native communities served by Plaintiff Indigenous Women Rising (IWR). *Id.* ¶¶ 4–5, 18. These harms are significantly worse when individuals seek emergency care—especially emergency terminations of pregnancy. *Id.* ¶¶ 8–12. The Rollback Rule continues to strain IWR's resources and frustrate its mission, *id.* ¶¶ 6–16, 19–20, 23–24, particularly because a substantial number of its clients hail from Texas, where the Rollback Rule remains fully in effect, *id.* ¶ 10.[8]

These effects have not disappeared simply because HHS published a new rule in the Federal Register. The Rollback Rule creates a "continuing and brooding presence" of confusion, fear, and harm because it does not explicit prevent sex discrimination. *See Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 929–33 (7th Cir. 2013). These continuing harms show that the new rule—even if it takes full effect—does not moot Plaintiffs' claims. *See Rocky*

---

[7] *See* Hoang Decl. ¶ 12, ECF No. 141-1; *see also id.* ¶¶ 20–24 (recounting risk of discrimination related to gender-affirming care when Equality California members travel outside California); McGovern Decl. ¶¶ 35–36, ECF No. 141-2 (Rollback Rule continues to cause patients to "uproot[] their entire lives to move to New York City to ensure their access to gender-affirming medical care."); *see also id.* ¶ 35 (safety-net providers are confronted with influx in out-of-state trans and non-binary patients from 3,000 in 2018 to 6,000 in 2024 due to the "effect[s] of the Rollback Rule").

[8] Other Plaintiffs and their members similarly face ongoing injury as a result of the Rollback Rule, as Plaintiffs have explained in their summary-judgment brief. *See* ECF No. 141 at 7–10.

*Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1097 n.12 (9th Cir. 2013) (challenge to original regulation not moot because effects of original standards continued).  The Rollback Rule's residual effects still echo throughout the American health care system, and they still harm Plaintiffs.

Because Plaintiffs have shown the 2024 Rule has not completely and irrevocably eradicated the effects of the Rollback Rule, and because Defendants cannot dispute that Plaintiffs' injuries are likely to recur, *see supra* at 13–16, the mootness doctrine does not apply here.  Whether characterized as voluntary cessation doctrine or a straightforward application of mootness principles, "the core question Article III compels us to ask is whether [] adjudication of the issue can grant meaningful relief."  *Conservation L. Found. v. Evans*, 360 F.3d 21, 26 (1st Cir. 2004).  The answer here is yes:  "No matter how the issue is framed, . . . where a challenged regulation continues . . . ," a challenge to that regulation is "capable of meaningful review."  *Id.*

## CONCLUSION

For these reasons, this Court should reject Defendants' assertion that Plaintiffs' claims are moot and should order Defendants to promptly respond to Plaintiffs' motion for partial summary judgment.

Dated: July 22, 2024

Respectfully submitted,

*/s/ Gregory F. Noonan*
Gregory F. Noonan
(BBO# 651035)
Safa Osmani
(BBO# 697034)
HOGAN LOVELLS US LLP
125 High Street
Boston, MA 02110
(617) 371-1000
gregory.noonan@hoganlovells.com
safa.osmani@hoganlovells.com

Jessica L. Ellsworth*
Jo-Ann Sagar*
Marlan Golden**
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
jessica.ellsworth@hoganlovells.com
jo-ann.sagar@hoganlovells.com
marlan.golden@hoganlovells.com

Peter William Bautz*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
peter.bautz@hoganlovells.com

Sydney Duncan*
Shayna Medley*
TRANSGENDER LEGAL
DEFENSE & EDUCATION FUND
520 8th Avenue, Suite 2204
New York, NY 10018
(646) 898-2205
sduncan@transgenderlegal.org
smedley@transgenderlegal.org

Dale Melchert*
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
(510) 407-6367
dale@transgenderlawcenter.org

Michelle Banker*
Alison Tanner*
Kenna Titus*
NATIONAL WOMEN'S LAW
CENTER
1350 Eye Street NW, Suite 700
Washington, DC 20002
(202) 588-5180
mbanker@nwlc.org
atanner@nwlc.org
ktitus@nwlc.org

21

Lynly Egyes*
TRANSGENDER LAW CENTER
594 Dean Street
Brooklyn, NY 11238
(973) 454-6325
lynly@transgenderlawcenter.org

Maryanne I. Tomazic*
CENTER FOR HEALTH LAW
AND POLICY INNOVATION
Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-1668
mtomazic@law.harvard.edu

*Admitted Pro Hac Vice
**Pro Hac Vice Motion Pending

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 22, 2024, a copy of the foregoing was filed and served via ECF on all counsel of record.

*/s/ Gregory F. Noonan*
Gregory F. Noonan