UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BAGLY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT <br> OF HEALTH AND HUMAN SERVICES, <br> *et al.*, <br><br> Defendants. | C.A. No. 20-cv-11297-PBS <br> (Leave to file granted 6/17/24) |

### **REPLY IN SUPPORT OF DEFENDANTS' ASSERTION OF MOOTNESS**

It is "a perfectly uncontroversial and well-settled principle of law," *Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 827 F.3d 100, 113-14 (D.C. Cir. 2016), that when "the law that is the basis for the complaint has been replaced by a new law during the case's pendency," the case is moot, *Am. College of Pediatricians v. Becerra ("ACP")*, No. 23-5053, 2024 WL 3206579, at *2 (6th Cir. June 27, 2024) (per curiam).

In June, the Sixth Circuit applied that principle to hold that another lawsuit against the U.S. Department of Health and Human Services ("HHS") was mooted by HHS's promulgation of the 2024 Rule. *Id*. at *1. In 2021, after the 2020 Rule at issue in this case was promulgated, HHS notified the public of its intention to "interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) [d]iscrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity." *Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972*, 86 Fed. Reg. 27,984, 27,985 (May 25, 2021). That notice generated a lawsuit that the Sixth Circuit found mooted by the 2024 Rule. *ACP*, 2024 WL 3206579, at *1. The court explained that since issuing the 2021 notice, HHS "wiped the slate clean on Section 1557" by "promulgat[ing] a new [2024] rule to replace its prior interpretations of Section 1557." *Id*.

The Sixth Circuit's reasoning applies with even greater force to Plaintiffs' challenge to provisions of the 2020 Rule, which predates the notice at issue in *ACP*. Plaintiffs do not dispute that the 2024 Rule is consistent with their view of the law. The 2024 Rule supersedes the 2020 Rule and thereby conclusively moots Plaintiffs' challenge to that rule in this case. In arguing otherwise, Plaintiffs essentially seek to collaterally attack decisions by several district courts that have entered preliminary relief against HHS with respect to the 2024 Rule for entities that are not parties to this case. Plaintiffs cite no authority for the premise that they can use this case—where the parties lack any ongoing controversy—to obtain an advisory opinion that HHS's arguments in other courts in defense of provisions of the 2024 Rule are correct.

To the extent Plaintiffs are concerned about the outcome of other suits challenging the 2024 Rule, Plaintiffs could present their arguments as an amicus supporting the Government. But Plaintiffs may not use this litigation to collaterally attack decisions in other federal courts. Plaintiffs have failed to rebut Defendants' showing that HHS's promulgation of the 2024 Rule has mooted this case because they have not identified any relief that would be feasible, effective, and appropriate; and no exception to mootness applies.

**ARGUMENT**

**I.      The 2024 Rule Superseded the 2020 Rule Thereby Mooting any Challenge to the 2020 Rule.**

"When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). By promulgating the 2024 Rule, HHS has done just that. Plaintiffs frame the relevant question as whether the 2024 Rule is "on the books." Pls.' Opp'n to Defs.' Assertion of Mootness at 9, 17, ECF No. 167 (citations omitted). It is. "Like an enacted statute, which becomes 'valid law' once enacted even if not yet 'effective,' . . . a duly prescribed rule is law even if it sets a future effective date." *Humane Soc'y of the U.S. v. USDA*, 41 F.4th 564, 571

(D.C. Cir. 2022) (quoting *United States v. Brundage*, 903 F.2d 837, 843 (D.C. Cir. 1990)), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022). Because "the law that is the basis for the complaint has been replaced by a new law during the case's pendency," this case is moot. *ACP*, 2024 WL 3206579, at *2. HHS has "deal[t] with the problem afresh by taking *new* agency action." *See Biden v. Texas*, 597 U.S. 785, 808 (2022) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 21 (2020)). *See also Gulf of Me. Fisherman's All. v. Daley*, 292 F.3d 84, 88-90 (1st Cir. 2002) (superseding rule renders challenge to prior rule moot).

Plaintiffs' opposition fails to rebut this "well-settled principle of law." *Akiachak Native Cmty.*, 827 F.3d at 113. They rely on only two cases—*National Association of Manufacturers v. Department of Defense* ("*NAM*"), 583 U.S. 109 (2018) and *Board of County Commissioners of Weld County v. Environmental Protection Agency*, 72 F.4th 284 (D.C. Cir. 2023)—finding that challenges to agency rules were not mooted by further agency action. ECF No. 167 at 9. But the further agency action at issue in those cases were proposed rules. *NAM*, 583 U.S. at 120 n.5; *Weld Cnty.*, 72 F.4th at 295 (finding that a "proposed rule" did "not change" the analysis). The 2024 Rule is not a proposed rule.

Although Plaintiffs place significant reliance on *NAM*, ECF No. 167 at 9, that case does not advance their argument. *NAM* involved a challenge to a 2015 Environmental Protection Agency ("EPA") Rule defining the statutory term "waters of the United States." Final Rule, *Clean Water Rule: Definition of "Waters of the United States"*, 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 WOTUS Rule"). At the time the Supreme Court decided *NAM*, EPA had not been enforcing the 2015 WOTUS Rule because the Sixth Circuit stayed its enforcement nationwide and a federal district court had enjoined the Rule's enforcement in thirteen states. Proposed Rule, *Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule*, 82 Fed. Reg. 55,542, 55,543 (Nov. 22, 2017). In 2017, EPA issued two proposed rules. One proposed rescinding and replacing the 2015 WOTUS Rule. Proposed Rule, *Definition of "Waters of the United States"—Recodification of Pre-Existing Rules*, 82 Fed. Reg. 34,899 (July

27, 2017). The other proposed to change the effective date of the 2015 WOTUS Rule, pushing it back several years. 82 Fed. Reg. at 55,542-43. In *NAM*, the Supreme Court implicitly suggested that challenges to the 2015 WOTUS Rule would likely be mooted if EPA finalized the proposal to rescind and replace the challenged 2015 WOTUS Rule. *See* 583 U.S. at 120 n.5. On the other hand, the Court opined that challenges to the 2015 WOTUS Rule would remain live if EPA finalized the proposed rule that "simply delays the WOTUS Rule's effective date" because the 2015 WOTUS Rule itself would remain "on the books." *Id*.

Here, HHS has not merely delayed the effective date of the 2020 Rule that Plaintiffs challenge; it has finalized the 2024 Rule to rescind and replace the 2020 Rule. And Plaintiffs do not dispute that the 2024 Rule is consistent with their view of the law and addresses their concerns with the 2020 Rule. Under *NAM*, Plaintiffs' challenge to the 2020 Rule is thus moot. Contrary to Plaintiffs' assertion, it does not matter that other courts have "enjoined [enforcement of] and delayed the effective date of" provisions of the 2024 Rule. ECF No. 167 at 8. Under *NAM*, it is sufficient that HHS has issued a new rule to rescind and replace the rule that Plaintiffs challenge. Indeed, in *ACP*, after the 2024 Rule was promulgated but before its effective date, the Sixth Circuit concluded that the 2024 Rule rendered moot those plaintiffs' challenge to HHS's notice of interpretation. *ACP*, 2024 WL 3206579, at *1-2. Thus, Plaintiffs' challenge here to the 2020 Rule is similarly moot. *See id*.

Consider the matter from the perspective of the infeasibility, futility, and ineffectiveness of relief should Plaintiffs prevail. *In re AOV Indus., Inc.*, 792 F.2d 1140, 1148 (D.C. Cir. 1986). Plaintiffs' opposition focuses on the claimed continued availability of a declaratory judgment that unspecified provisions of the 2020 Rule "are inconsistent with—and foreclosed by—the plain text of Section 1557." ECF No. 167 at 10. But a declaratory judgment—or any other remedy—is unavailable (1) because there is insufficient controversy *between the parties to this action* and (2) because HHS may be unable to adhere to the law as declared by the Court in any declaratory judgment.

4

First, a declaratory judgment requires "a substantial controversy, between parties having adverse legal interests." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 916 F.3d 98, 111 (1st Cir. 2019) (citation omitted); *see also Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 192 (1st Cir. 2022) ("requests for declaratory relief can only survive a mootness challenge where 'the facts alleged . . . show that there is a substantial controversy.'") (citation omitted).  But there is no substantial controversy between the parties permitting a declaratory judgment here.  Plaintiffs do not dispute that the 2024 Rule is consistent with their view of the law.  For example, insofar as any Plaintiff is seeking a declaration that Section 1557's prohibition on discrimination on the basis of sex includes discrimination on the basis of gender identity, Mem. in Supp. of Pls.' Mot. for Partial Summ. J. at 18, ECF No. 141,[1] the parties agree, rendering that declaratory judgment futile.  The 2024 Rule provides, at 45 C.F.R. § 92.101(a)(2)(iv), that discrimination on the basis of sex includes discrimination on the basis of gender identity.  *See Hall v. Beals*, 396 U.S. 45, 48 (1969) (holding that statutory amendment rendered case moot by considering "statute as currently written" by the Legislature); *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (declaratory relief inappropriate where agency "readily concede[s]" the issue and so the "legal relations between the parties are not uncertain or in need of clarification"); *see also Chancey v. Biden*, No. 1:22-cv-110-MW/GRJ, 2022 WL 20087120, at *2 (N.D. Fla. Aug. 25, 2022) ("Entertaining a request for declaratory judgment" resolving issue that the parties do not dispute "serves no purpose beyond wasting this Court's resources.").  As another example, the parties also agree on the scope of covered entities governed by Section 1557.  *Compare* ECF No. 141 at 34-42, *with* 45 C.F.R.

---

[1] Defendants dispute that this issue is properly before the Court in this action.  The 2020 Rule did not include a provision stating that discrimination on the basis of sex excludes discrimination on the basis of gender identity.  *See Washington v. HHS*, 482 F. Supp. 3d 1104, 1114 n.8 (W.D. Wash. 2020).  Moreover, in its decision on Defendants' motion to dismiss, the Court exercised equitable discretion to deny review to Plaintiffs' challenge "to the [2020] repeal of the definition of 'on the basis of sex[.]'" *BAGLY v. HHS*, 557 F. Supp. 3d 224, 232 (D. Mass. 2021) ("[A] court may 'in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere'") (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 155 (1967)).

§ 92.2(a) (2024). That other district courts have preliminarily enjoined HHS from taking enforcement action against covered entities consistent with the views of the parties here that discrimination on the basis of sex includes discrimination on the basis of gender identity does not mean that there remains a substantial controversy between the parties *in this suit*.

Second, Plaintiffs have not established how any declaratory judgment will affect HHS's conduct. "A declaratory judgment . . . will constitute relief . . . if, and only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). *See Jordan v. Sosa*, 654 F.3d 1012, 1030 (10th Cir. 2011) (a declaratory judgment "should ordinarily *not* be granted unless the parties' plans of actions are likely to be affected by" it) (quoting *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992)). If an "order declaring [a policy or rule] illegal would accomplish nothing," it "amount[s] to exactly the type of advisory opinion Article III prohibits." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008). Thus, a proper declaratory judgment is not an advisory opinion because courts anticipate that the parties to the judgment will "adhere to the law as declared by the court." *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985); *see also Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (discussing preclusive purpose of a declaratory judgment). But a declaratory judgment against HHS that conflicts with preliminary orders issued against HHS by district courts since HHS finalized the 2024 Rule—as Plaintiffs seemingly contemplate—would be futile because HHS would be unable to adhere to the law as declared by this Court.

Consider if this Court entered a judgment against HHS in favor of Plaintiff Crescentcare declaring that Section 1557's prohibition on discrimination on the basis of sex includes discrimination on the basis of gender identity. If Crescentcare thereafter files a complaint with HHS's Office for Civil Rights alleging that a health care provider or insurer has violated Section 1557 by subjecting an individual to discrimination on the basis of gender identity, HHS would only be able take enforcement action consistent with the law as declared by the Court by violating contrary court orders. For example, HHS is presently preliminarily enjoined "nationwide from

6

enforcing, relying on, implementing, or otherwise acting pursuant to the [2024 Rule] to the extent that the [2024 Rule] provides that 'sex' discrimination encompasses gender identity [discrimination]." Preliminary Injunction at 2, *Tennessee v. Becerra*, No. 1:24-cv-00161-LG-BWR (S.D. Miss. July 3, 2024), ECF No. 30. "[T]hose who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is modified or reversed." *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 439-40 (1976).[2] Any declaratory judgment that HHS cannot adhere to or implement due to another court's preliminary injunction "would be essentially advisory in nature." *See Georgia v. Wheeler*, No. 2:15-cv-00079, 2020 WL 6948800, at *3 (S.D. Ga. Jan. 3, 2020).

Plaintiffs' reliance on *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974), is misplaced. ECF No. 167 at 10-12. In *Super Tire*, an employer sought a declaratory judgment against state officials that a statute providing benefits to striking workers violated the Supremacy Clause. 416 U.S. at 118-19. The Supreme Court found that the case was not moot because, even though the strike that precipitated the lawsuit ended soon thereafter, the employers and the state officials responsible for enforcing the statute still retained a sufficient controversy so as to justify declaratory relief. *Id*. at 122-24. But the Legislature had not "wiped the slate clean," *see ACP*, 2024 WL 3206579, at *1, by replacing or amending the statute that the plaintiffs sought to declare unconstitutional, *Super Tire*, 416 U.S. at 122-24. Rather, the state's policy that was "declared positively" by statute was "fixed and definite." *Id*. at 123-24. Here, in contrast, HHS has declared positively its view on the proper implementation of Section 1557 in the 2024 Rule. Insofar as

---

[2] In addition to court orders issued since the 2024 Rule was promulgated, HHS is subject to a declaratory judgment that applies to a certified class of "[a]ll health-care providers subject to Section 1557 of the [ACA,]" Order at 1, *Neese v. Becerra*, No. 2:21-cv-00163-Z (N.D. Tex. Nov. 22, 2022), ECF No. 70, and provides that "Section 1557 of the ACA does not prohibit discrimination on account of sexual orientation and gender identity," Final Judgment at 1, *Neese v. Becerra*, No. 2:21-cv-00163-Z (N.D. Tex. Nov. 22, 2022), ECF No. 71. The Government's appeal of the district court's final judgment in *Neese* is pending before the Fifth Circuit. But as long as it remains valid, the *Neese* judgment "conclusively resolves" the issue as between HHS and health care provider class members. *Haaland*, 599 U.S. at 293.

HHS is not enforcing any provision of that rule due to other courts' orders, that state of affairs hardly provides for a substantial controversy between the parties to this action, much less one that is "fixed and definite" as in *Super Tire*.  *See id*.; *see also A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961) (declaratory judgment unavailable "where it appears that a challenged 'continuing practice' is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted").

Plaintiffs also incorrectly argue that declaratory relief is available because it would "potentially shape future rulemakings." ECF No. 167 at 12. Even when an agency announces an intent to propose new regulations—which HHS has not—courts are clear that "[i]t would be entirely inappropriate for [a] court to do as [Plaintiffs] suggest[] and issue an advisory opinion to guide the [agency's] rulemaking." *Alaska v. USDA*, 17 F.4th 1224, 1228 (D.C. Cir. 2021) (quoting *Nat'l Wildlife Fed'n. v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988)).

Plaintiffs assert that "a favorable decision would restore the anti-discrimination protections secured under [their view of] Section 1557." ECF No. 167 at 10. But HHS already did that when it promulgated the 2024 Rule, which Plaintiffs do not dispute is consistent with their view of the law. This Court cannot in effect require HHS to enforce Section 1557 against third parties where HHS is prohibited from taking such enforcement action by orders of other courts. "It would hardly be appropriate to retain [this case] on the docket to permit the plaintiffs a form of collateral attack" on other courts' decisions. *Miller v. Benson*, 68 F.3d 163, 165 (7th Cir. 1995); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("collateral[] attack" on another court's injunction would "seriously undercut[] the orderly process of the law"). To the extent Plaintiffs are concerned about the outcome of other suits challenging the 2024 Rule, Plaintiffs could present their arguments as an amicus supporting the Government in those ongoing proceedings. But Plaintiffs may not use this litigation to collaterally attack decisions in other federal courts.

Plaintiffs' request for vacatur of provisions of the 2020 Rule is unavailable for largely the same reasons.[3]  Plaintiffs cite no authority for the notion that the Court may vacate a rule in response to other courts' orders preliminarily enjoining enforcement of or staying the effective date of provisions of a superseding rule.  And insofar as Plaintiffs' argument is that this case might someday become "live" again by virtue of a future non-appealable judgment issued by another court, that argument rests on mere speculation.  *See Town of Portsmouth v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016).  No court has issued a merits decision in a case challenging the 2024 Rule, much less determined what the appropriate remedy would be if the court determined the 2024 Rule was unlawful in some way.  The parties will no doubt brief issues of remedy presented by a theoretical future merits decision in those cases and, as noted above, nothing prevents Plaintiffs here from participating in those cases as an amicus.  The pendency of those cases does not provide a basis to retain this case on the Court's docket when it is not justiciable.  *New York v. Raimondo*, No 1:39-cv-09380-MKV, 2021 WL 1339397, at *2 (S.D.N.Y. Apr. 9, 2021); *Georgia*, 2020 WL 6948800, at *3.

The only question is whether HHS has rescinded and replaced the 2020 Rule Plaintiffs challenge, not whether Plaintiffs are now harmed by the impact of other courts' preliminary orders that HHS has opposed.  *Miller*, 68 F.3d at 165.  Because HHS rescinded and replaced the challenged rule, this case is moot.  *Id*.

## II. No Exception to the Mootness Doctrine Applies.

### A. Plaintiffs Have Not Established that the Mootness Exception for Controversies Capable of Repetition Yet Evading Judicial Review Applies.

The mootness exception for controversies capable of repetition, yet evading review, is not applicable here.  The First Circuit has strictly limited this exception—requiring "the party contesting mootness [to] show that '(1) the challenged action was in its duration too short to be

---

[3] It is the Government's view that the APA does not authorize universal vacatur of agency rules at all.  *Accord United States v. Texas*, 599 U.S. 670, 693-99 (2023) (Gorsuch, J., concurring).

fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party wi[ll] be subjected to the same action again.'" *Harris*, 43 F.4th at 194 (citation omitted and emphasis removed). "Though often invoked, this exception operates only in extraordinary situations." *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 47 (1st Cir. 2022).

To satisfy the first prong, Plaintiffs "must show that 'the generic types of claims that they seek to pursue are likely to evade review.'" *Harris*, 43 F.4th at 194 (quoting *Cruz v. Farquharson*, 252 F.3d 530, 535 (1st Cir. 2001)). Plaintiffs cannot make that showing because a challenge to a federal regulation is not a type of claim that is "inherently transitory." *Id.* While Plaintiffs' challenge to the 2020 Rule became moot because HHS promulgated a superseding regulation, that is fundamentally different from the sorts of claims that have been found to evade review due to the transitory nature of plaintiffs' injuries (e.g., in cases involving strikes or pregnancies). *See id.*; *cf. Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985) ("Undeclared 'war[s] of aggression,' . . . unlike elections, trials, pregnancies, or public school years, are not inherently short in duration.") (citations and footnotes omitted). Unlike a pregnancy or a strike, an agency's rule could last indefinitely.

Moreover, "rulemaking is a lengthy process, often taking years," *NRDC v. NRC*, 823 F.3d 641, 649 (D.C. Cir. 2016); it requires consideration of tens of thousands of comments and consensus across broad swaths of the federal government, *see* Exec. Order No. 12,866, 58 Fed. Reg. 51,735 (Sept 30, 1993) (requiring review of significant regulations by the Office of Information and Regulatory Affairs); Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980) (requiring Department of Justice review of proposed rules implementing nondiscrimination statutes). The process means that any future rule is unlikely to evade review due to subsequent rulemaking. Just because Plaintiffs' claims became moot before they could be reviewed does not mean that theirs are among the generic types of claims that satisfy this prong. *See Cruz*, 252 F.3d at 535 ("the plaintiffs' experience, in and of itself, constitutes too frail a foundation to support the conclusion" that "claims they seek to pursue are likely to evade review"); *Conyers*, 765 F.2d at

1128 ("The question . . . is not whether the particular activity complained of ended before there was an opportunity to fully litigate the dispute.").

The First Circuit has held that challenges to agency regulations that have been superseded do not fall within the narrow exception to mootness for controversies capable of repetition yet evading review. In *Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84 (1st Cir. 2002), for example, the First Circuit held that fishing regulations that were "in place for as much as a year" before being superseded by new regulations were not truncated too quickly to evade review. *Id*. at 89. The 2020 Rule was in place much longer—for about four years—before HHS issued the 2024 Rule. *See Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997) (a superseded agency action that "spanned a period of four years" would not evade review); *Hodel*, 839 F.2d at 742 (holding that a "regulation will be reviewable" "if and when the Secretary repromulgates [it]").

Plaintiffs' speculation that HHS might someday restore the 2020 Rule's provisions does not satisfy the second prong. *See Harris*, 43 F.4th at 195 ("avoiding mootness cannot rest on 'speculation' about some future potential event"). Plaintiffs purport to provide three reasons that harm is likely to recur, but all of them boil down to the same request: they ask the Court to speculate that the "same agency leadership" that issued the 2020 Rule will return to HHS after a future Presidential election and then reinstate the same provisions of the 2020 Rule that Plaintiffs challenge here. ECF No. 167 at 13-15. But that prediction would inappropriately "require [the Court] to speculate about future actions by policymakers." *Alaska*, 17 F.4th at 1229. Moreover, even if HHS were to change course and promulgate a new rule reflecting the policies embodied in the 2020 Rule, that would give rise to a new challenge to a different rule based on a new administrative record; it would not resurrect a challenge to the 2020 Rule. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("Under the terms of the APA, [a plaintiff] must direct its attack against some particular 'agency action' that causes it harm."); *Gulf of Me.*, 292 F.3d at

11

88 (challenge to rule that "was expressly reconsidered and re-adopted in later" agency action based on new administrative record moot even if "unmodified" in superseding agency action).

In any event, this Court cannot rely on such speculation about possible future events to exercise jurisdiction over Plaintiffs' challenge to a regulation that has been superseded. As the D.C. Circuit has explained, a court "cannot presume that any such future rulemaking will" restore the provisions of a prior rule. *Alaska*, 17 F.4th at 1228. That is because "[d]oing so would be inconsistent with the purpose of notice-and-comment rulemaking under the Administrative Procedure Act[.]" *Id*. A court may not "presume that the Department [would be] violating the law by going into that process with its mind made up" even assuming a change in Executive Branch leadership. *Id*. at 1229 n.5. Although "[n]o entity of the federal government can ever guarantee that a statute, a regulation, or an executive order, after being repealed or withdrawn, will not be reenacted or reissued," the "structural obstacles to reimposing a challenged law—such as a full repeal and the need to undertake new lawmaking"—and here, the requirement to use notice and comment procedures—"generally moot a case." *Id*. HHS cannot rescind and replace the 2024 Rule "at the stroke of a pen," and this case is therefore moot. *See id*.; *see also Humane Soc'y*, 41 F.4th at 572 ("longstanding precedent holds that once an agency prescribes a rule, it must provide notice and comment before repealing it").[4]

### B. The Voluntary Cessation Exception Does Not Apply.

The "voluntary cessation" exception to mootness does not apply where a federal agency has officially rescinded a challenged policy using notice and comment rulemaking and there is no evidence that it seeks to reinstate the rescinded policy. What HHS has accomplished by

---

[4] Plaintiffs' reliance on *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020), which did not involve the mootness exception for controversies capable of repetition yet evading review, is misplaced. ECF No. 167 at 15. The *Ohio* court did not cite any authority to support its assertion that a controversy could remain live not because of the defendants' conduct but instead as a result of hypothetical future "orders of two judges or even one" that the defendants would oppose. *Ohio*, 969 F.3d at 310. And Plaintiffs fail to mention that, on remand, the district court held that the case was moot since the challenged rule's "resurrection" was "speculative." *Ohio v. EPA*, No. 2:15-cv-2467, 2022 WL 866273, at *4 (S.D. Ohio Mar. 23, 2022). The same is true here. *Supra* at 9.

completing new rulemaking "is more accurately characterized as the provision of appropriate relief . . . than as the 'cessation of illegal conduct.'" *NRDC v. NRC*, 680 F.2d 810, 814 n.8 (D.C. Cir. 1982); *see also Alaska*, 17 F.4th at 1227-29 (voluntary cessation exception inapplicable in cases involving rules promulgated by notice and comment rulemaking); *Miller*, 68 F.3d at 165 (legislative enactment "gave plaintiffs what they sought, and this case is therefore moot"); *ACP*, 2024 WL 3206579, at *2 ("Because HHS promulgated the 2024 rule through a multiyear notice-and-comment process, we see little basis for applying the voluntary-cessation doctrine to preserve the justiciability of this case.").

  Plaintiffs' opposition brief mistakes the relevant burdens of proof for the voluntary cessation exception in the context of changed government policy. ECF No. 167 at 18. Courts have applied a burden-shifting approach when regulatory changes moot a case, explaining that although the party asserting mootness bears the "burden of showing that the challenged conduct cannot reasonably be expected to start up again," the "government satisfies this burden when it changes or repeals the regulation at issue." *M.W. ex rel. Hope W. v. U.S. Dep't of Army*, No. 16-CV-04051-LHK, 2017 WL 10456732, at *5 (N.D. Cal. Dec. 15, 2017) (citation omitted), *aff'd on appeal sub nom. Am. Diabetes Ass'n v. U.S. Dep't of Army*, 938 F.3d 1147 (9th Cir. 2019). Under the *M.W./Alaska.* framework, rescinding and replacing a prior rule by publishing a new notice-and-comment rule in the Federal Register is enough, standing alone, to satisfy the government's burden to show this case is moot. *See Alaska*, 17 F.4th at 1228 ("One problem with th[e] argument" that "the prospect of a new regulation reimposing the [challenged] Rule . . . saves [a] case from mootness . . . is that it contradicts . . . many cases."); *ACP*, 2024 WL 3206579, at *2. The burden then shifts to Plaintiffs to show "evidence of bad faith," *M.W.*, 2017 WL 10456732, at *6—that the new policy was promulgated only "to secure a dismissal" and with an intent to return to the old policy "when the judge is out of the picture," *see Bos. Bit Labs v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (citation omitted). And Plaintiffs come nowhere close to satisfying that burden. Far from questioning HHS's good faith in promulgating the 2024 Rule, Plaintiffs simply speculate

13

that, following a hypothetical change in administration, HHS might promulgate a new rule similar to the 2020 Rule. ECF No. 167 at 17-18 (citing ECF No. 167 at 13-16). "Mere speculation that [HHS] may return to its previous ways is no substitute for concrete evidence of secret intentions." *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1256 (11th Cir. 2017) (citation omitted), *abrogated on other grounds by Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021) (citation omitted).

Regardless, the First Circuit has made clear that the voluntary cessation exception "does *not* apply if the change in conduct is *unrelated* to the litigation." *Calvary Chapel*, 52 F.4th at 47 (quoting *Bos. Bit Labs, Inc.*, 11 F.4th at 10); *see also Alaska*, 17 F.4th at 1229 ("'[T]he voluntary cessation exception to mootness has no play' when the agency did not act 'in order to avoid litigation.'") (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011)); *ACLU of Mass v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (voluntary cession does not apply when "purpose" of the action mooting the case "was not to moot the litigation"). And HHS's conduct here was not driven by this litigation, or any of the other challenges to the 2020 Rule, but instead was part of a comprehensive shift in policy. The rulemaking proceeding that culminated in the 2024 Rule was not part of an HHS "schem[e] . . . to 'immuniz[e] itself from suit indefinitely' by unilaterally changing 'its behavior long enough to secure a dismissal' and then backsliding when the judge is out of the picture[.]" *Bos. Bit Labs*, 11 F.4th at 10 (quoting *Lewis*, 813 F.3d at 59). HHS issued the 2024 Rule "to better align the Section 1557 regulation with the statutory text of 42 U.S.C. 18116, to reflect recent developments in civil rights case law, to address unnecessary confusion in compliance and enforcement resulting from the 2020 Rule, and to better address issues of discrimination that contribute to negative health interactions and outcomes," not for the purpose of mooting this case or any others. Proposed Rule, *Nondiscrimination in Health Programs and Activities*, 87 Fed. Reg. 47,824, 47,829 (Aug. 4, 2022). *See* Decl. of Robinsue Frohboese ¶¶ 12-13, ECF No. 68 (explaining that new rulemaking was initiated in response to several executive orders, not for the purpose of mooting this case); *see also BAGLY*, 557 F. Supp. 3d at

233 (citing Exec. Order No. 13988, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021)). *Cf. Campbell v. Clinton*, 203 F.3d 19, 34 n.14 (D.C. Cir. 2000) ("The President's cessation of the attack on Yugoslavia was not 'voluntary' within the" meaning of the doctrine; "the war ended because the United States won, not because the President sought to avoid litigation."). Indeed, HHS's issuance of the 2024 Rule has brought more litigation, not less.[5]

Plaintiffs cite no case where a court found the voluntary cessation exception applicable after the Government rescinded and replaced a challenged rule using notice and comment rulemaking and Federal Register publication, as HHS has here. And Plaintiffs do not dispute that the 2024 Rule reflects a different approach from the 2020 Rule in all relevant aspects and that this new approach comports with Plaintiffs' understanding of the law. Those facts distinguish this case from the cases cited by Plaintiffs. In *Conservation Law Foundation v. Evans*, 360 F.3d 21 (1st Cir. 2004), for example, the First Circuit found that an action challenging "Framework 14, a rule that adjusted certain restrictions on sea scallop fishing," was not rendered moot by promulgation of a new Framework that was "largely an extension of Framework 14" and, as "a practical matter," "was designed merely to maintain the status quo until [the agency] could complete a more comprehensive overhaul of its management measures." *Id*. at 23, 25. *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) is likewise inapposite. It involved a private sector defendant, *see Flanigan's Enters.*, 868 F.3d at 1256 ("governmental entities and officials have been given considerably more leeway than private parties" in the voluntary cessation analysis) (citation omitted), and a resignation that could be reversed "at the stroke of a pen," *see Alaska*, 17 F.4th at 1229 n.5. But relevant distinctions aside, the voluntary cessation finding in *W.T. Grant* was ultimately irrelevant to the Court's conclusion, because it held that the district court had properly refused equitable relief. 345 U.S. at 635-36.

---

[5] *Florida v. HHS*, No. 8:24-cv-1080 (M.D. Fla.); *Texas v. Becerra*, No. 6:24-cv-211 (E.D. Tex.); *Tennessee v. Becerra*, No. 1:24-cv-161 (S.D. Miss.); *McComb Children's Clinic, LTD. v. Becerra*, No. 5:24-cv-48 (S.D. Miss.); *Cath. Benefits Ass'n v. Becerra*, No. 3:23-cv-203 (D.N.D.); *Missouri v. Becerra*, No. 4:24-cv-00937 (E.D. Mo.).

In each of the other cases Plaintiffs cite, the voluntary cessation exception was determined not to apply or was not at issue. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 634 (1979) (finding "controversy has become moot"); *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1097 n.12 (9th Cir. 2013) (concluding case was not moot because Fuel Standard credits issued under challenged scheme would continue to carry forward in amended framework, not based on voluntary cessation); *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 933 (7th Cir. 2013) (concluding case was "an abstract dispute about the law") (citation omitted). For all these reasons, the voluntary cessation exception does not apply here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this case without prejudice as moot.

Dated: August 12, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Liam C. Holland*
LIAM C. HOLLAND B.B.O. #704799
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: Liam.C.Holland@usdoj.gov

*Counsel for Defendants*